# REPORTS OF CASES

# THE SUPREME COURT,

## JULY TERM, 1870.

39 473
148 401
o148 402

No. 2,323.

**THE CITY AND COUNTY OF SAN FRANCISCO, Appellant, *v.* THE SPRING VALLEY WATER WORKS, Respondent.**

Statutory Construction. — Franchise of the Spring Valley Water Works.— By the provisions of the Act of the 23d of April, 1858, authorizing George Ensign and others, owners of the Spring Valley Water Works, to lay down water pipes in the public streets of the City and County of San Francisco, the Spring Valley Water Works are not required to supply said city and county with water for municipal purposes, free of charge, other than for the extinguishment of fires.

Pleading. — Estoppel. — A previous adjudication, in which the same rights were put in issue, may be properly pleaded by way of estoppel in a subsequent proceeding in equity, between the same parties.

*Per* Crockett, J.:

Statutory Construction. — Franchise of the Spring Valley Water Works.— The third section of the Act of the 23d of April, 1858, imposes upon the Spring Valley Water Works the obligation to furnish, free of charge, a *pro rata* supply of water for municipal purposes other than the extinguishment of fires, in the event of water being introduced by some other person or persons, as provided by said section.

Appeal from the District Court of the Fifteenth District, City and County of San Francisco.

The facts are stated in the opinion.

CAL. REP. XXXIX. — 60.

(T.)

*Jos. M. Nougues,* for Appellant.

*First*—The very subject-matter in controversy in this case has been once adjudicated between the identical parties. If that fact is true, the parties to the action are concluded by it.

The former adjudication we think sufficiently well pleaded.

(See the rule laid down by Lord Chief Justice De Gray in the Duchess of Kingston case, 20 How. St. Tr. 578.)

That the former adjudication would have been a bar to any defense except that which accrued subsequently, and which was different, we think is established by the principles recapitulated in *Gray* v. *Dougherty* (25 Cal. 266); *Hardenberg* v. *Bacon* (33 Cal. 356); *Boston* v. *Haynes* (33 Cal. 331.)

*Second*—The third section of the Act concerning which this whole difficulty has arisen, as sought to be construed by the respondent, would be meaningless.

The interpretation which we give to this section is, that the defendant is bound to furnish water to the plaintiff for the extinguishment of fires during the pendency of the same, and for all municipal uses, free of charge.

The construction of the section depends upon certain rules of law applicable to the construction of statutes, and if viewed by the light of reason and of those rules there is little difficulty in ascertaining the exact meaning of the section.

The Act is a grant of franchise to the grantees therein mentioned; it is, in effect, a practical monopoly.

The first rule which we shall invoke is, that all grants of privilege are to be liberally construed in favor of the public, and, as against the grantees of the monopoly or franchise, to be strictly interpreted.

Whatever is not unquestionably granted in such acts is taken to have been withheld. (Sedgwick on Const. and Stat. Law, 338.)

The second rule is, when words are at the end of a sentence they may refer to the whole. (Dwarris on Stat. 600.)

And if words are in the middle of a sentence and sensibly apply to a particular branch of it, they can be extended to that which follows.

" Statutes are read without breaks and stops ; it is not at any time clear that words belong to any particular branch of a sentence; it must be collected from the context to what they relate, and they are often, as will be seen, to be read distributively — *reddendo singula singulis.*" (Dwarris on Stat. 610 ; See, also, same author, page 613, and examples there given.)

*Third*—Statutes are to be viewed in the light of previous legislation, whether that be of State legislation through its laws, or municipal legislation through its ordinances, if the statute under consideration affects the city. (*Henry* v. *Tilson,* 17 Vt. 479 ; *The Proprietors of the Charles River Bridge* v. *The Proprietors of the Warren Bridge,* 11 Peters, U. S. 420.)

In *The Proprietors of the Stourbridge Canal* v. *Wheeley and others* (2 Barn. & Adol. 793), the Court say :

"This, like many other cases, is a bargain between a company of adventurers and the public, the terms of which are expressed in the statute ; and the rule of construction in all such cases is now fully established to be this: any ambiguity in the terms of the contract must operate against the adventurers, and in favor of the public, and the plaintiffs can claim nothing that is not clearly given them by the Act."

The case at bar is a bargain between a company of adventurers and the public, and the terms of the bargain is expressed in the Act.

Any ambiguity in this Act must operate in favor of the public ; and the defendant can claim nothing that is not specifically enumerated in the statute.

It is not specifically set forth that the company shall have the right to charge for water for municipal uses.

There is no evidence from which such an intention of right can be presumed.

*Chas. N. Fox,* for Respondent.

These water works are private property. Being such, they cannot be taken, in whole or in part, for public use, without rendering just compensation therefor. (Const. of Cal. Art. I, Sec. 8 ; *Wilkinson* v. *Leland et al.,* 2 Peters, 655 – 6.)

Statutes in derogation of common law principles are to be construed with strictness. (*People* v. *Buster*, 11 Cal. 191; *Turner* v. *Tuolumne County Water Company*, 25 Cal. 400; 22 Wend. 395; 3 Serg. & R. 541; 8 Ala. 522; 11 N. Y. 1 Kern, 593.)

We concede that, to some extent, this statute must be construed to be a waiver of a constitutional right; but it should be made to harmonize with the Constitution as far as possible, and the waiver should be carried to the smallest extent consistent with the language used. (*People* v. *Frisbie*, 26 Cal. 137.)

The right to take this water from our pipes is not a right reserved; it is a grant made to the public of a right to take private property. Such grants should be construed strictly. (4 Mass. 145, 473; 2 Cow. 419.)

It is a power claimed by the public, in derogation of individual right, and ought not to be allowed upon doubtful construction merely. (*Wright* v. *Briggs*, 2 Hill, 77; *People* v. *Lambier*, 5 Den. 9.)

Is there a doubt as to whether the Act of 1863 does repeal the pre-existing law defining the duties of the San Francisco Water Works?

A statute may be repealed by implication as well as in direct terms, and it is well settled that where a subsequent Act is repugnant to a former one, the last operates, without any repealing clause, as a repeal of the first. (*Pierpont* v. *Crouch*, 10 Cal. 316.)

A subsequent statute, making a different provision on the same subject, is not to be construed as an explanatory act, but an implied repeal of the former. (*Dash* v. *Van Kleek*, 7 Johns. 477; *Cal. Man. Co.* v. *Vanderpool*, 4 Cow. 566; *Livingston* v. *Harris*, 11 Wend. 329.)

*McAllister & Bergin*, also for Respondent.

*First*—The distinctive facts upon which relief in equity is prayed must be as specifically alleged as the legal or equitable duty, the enforcement of which is demanded, as they constitute the very *essence* of the *cause* of action. (*Corey* v. *Mann*, 16 How. Prac. R. 164; *City of Buffalo* v. *Holloway*,

3 Seld. 498; *Brown* v. *Harmon,* 21 Barb. 510; *Smith* v. *Lockwood,* 13 Barb. 216.)

In the *Branch Turnpike Company* v. *Supervisors of Yuba* (13 Cal. 190), this Court say:

"An injunction is never granted unless the bill shows some *vested right* in the plaintiff, which is likely to suffer great and irreparable injury from the act complained of. The mere allegation of such injury is insufficient. The *facts stated must satisfy the Court that such apprehension is well founded.* (6 Johns. Ch. 19; 2 Dallas, 405; 9 Gill & Johns. 468.")  "Nor ought it (equity) to interfere," says the Court in *Burnett* v. *Whitesides* (13 Cal. 158), "unless some equitable circumstances beyond the general allegation of irreparable injury be shown, such as insolvency or impediments to a judgment at law, or to adequate legal relief, or a threatened destruction of the property or the like." (*McLaughlin* v. *Piatti,* 27 Cal. 463; *Leach* v. *Day,* 27 Cal. 645; *Tomlinson* v. *Rubio,* 16 Cal. 206; *People* v. *Davidson,* 30 Cal. 287.)

*Second*—It is a familiar axiom in the doctrines of this branch of the law, that estoppels are "odious," and that if a party go behind the estoppel, he thereby sets the matter at large. *Nemo cebet bis vexari pro eadem causa* is the maxim. Where the cause of action in the former suit is not identical with that in the latter, the rule has no application. (*Tams* v. *Lewis,* 42 Penn. St. 410; *Davidson* v. *Shipman,* 6 Ala. 27; *Chamberlain* v. *Gaillard,* 26 Ala. 514; *The People* v. *Johnson,* 37 Barb. 517; *Megerle* v. *Ashe,* 33 Cal. 84; *Sutton* v. *Hanlon,* 20 Cal. 483; 1 Story's Eq. Sec. 64*e; Livingston* v. *Harris,* 3 Paige, 53.)

*Wilson & Crittenden,* also for Respondent.

TEMPLE, J., delivered the opinion of the Court, RHODES, C. J., and SPRAGUE, J., concurring:

This action was brought to restrain the defendant from cutting off and depriving the city of the supply of water for general municipal purposes. The plaintiff claims the right to tap any of the pipes of defendant, and take as much

water as it may require for the purpose of extinguishing fires, and for any and all other municipal uses, free of charge. This right the plaintiff has hitherto exercised, but the defendant, denying the right, except for the purpose of extinguishing fires, notified the plaintiff of its intention to cut off the supply for other purposes, and hence this suit. Upon filing the complaint, an order to show cause was made, and the defendant filed a demurrer and answer. Upon the hearing the demurrer was sustained and the injunction denied. Therefore, final judgment was entered and this appeal taken.

The defendant is the assignee of the San Francisco City Water Works, a corporation having a franchise to introduce water into the City of San Francisco, and also of George Ensign and his associates, who had a similar franchise. It is claimed that each of the franchises, thus assigned to the defendant, was held subject to the express obligation to furnish the plaintiff water, as claimed in the complaint.

It is clear to our minds, that the rights of plaintiff, in this respect, must be ascertained entirely from the conditions in the grant to George Ensign and his associates. By the third section of the Act to extend the rights and privileges of the San Francisco City Water Works, passed April 8, 1863, it is provided that any rights, privileges or immunities enjoyed by the Spring Valley Works, should be held and enjoyed by the San Francisco City Water Works. If, therefore, the Spring Valley Water Works, as assignees of George Ensign and his associates, were not required to furnish the city with water for municipal purposes free of charge, it was an immunity to which the San Francisco City Water Works became entitled by that Act.

George Ensign and his associates, and their assigns, were granted the right to lay down pipes in the streets of San Francisco, and to introduce, distribute and sell water, by an Act of the Legislature, passed April 23, 1858. The third section of this Act is as follows :

SECTION 3. The Chief Engineer of the Fire Department, under the direction of the Board of Supervisors of said City and County of San Francisco, shall have the right to tap any pipes so laid down, and connect hydrants there-

with and receive water therefrom for the extinguishment of any fire or fires during the pendency of the same, free of charge, to the full capacity of said water works, up to and until such time as water shall be introduced into said city and county by some other person or persons; and thereafter said Ensign and his associates, or their assigns, shall furnish for fire and other municipal uses, their quota or proportion of whatever water may be produced by them, or may be introduced by any other person or persons."

The fourth section provided a method of ascertaining the price to be charged for water in all cases, except those mentioned in Section 3. The other parts of the Act throw no light upon this inquiry.

The first part of Section 3 refers to the use of the water by the city for the extinguishment of fires only. It is to be taken by the Chief Engineer of the Fire Department for fires and during the pendency thereof. If the section had stopped here, there could have been no doubt of its meaning. It is perfectly obvious, also, that a modification of the duty or burden imposed upon the company was intended to be made by this remaining portion of the section. The company shall do this *up to* and *until* water shall be introduced by some one else, and thereafter the company shall be required to furnish their quota or proportion only. If we read the section omitting the words "for fire and other municipal uses," we find the section complete in itself, and free from all difficulty. The provision that thereafter they shall furnish their quota or proportion, is a qualification to the requirement that theretofore they should furnish all to the extent of the capacity of their works. It was a division of a burden which up to that time they were required to sustain alone, with any other party who might afterwards introduce water into the city. And there can be no doubt that they will be required to furnish their proportion of water after the burden shall be thus divided, upon the same terms that they are previously required to furnish all—that is, free of charge. The provision is not a restriction upon the right of the city to *purchase* more than a proportionate share from the company, but a limitation upon its right to take without compensation.

The addition to the qualifying clause in the statute of the words "for fire and other municipal uses," cannot change the meaning of the section in the respect in which we have, been considering it. The only difficulty which arises in the matter is, that the clause was evidently intended to divide a burden already imposed, and we would naturally expect to find the same description of the duty or obligation thus apportioned, as in that portion of the statute which originally imposed it; and if it were possible to infer the obligation to furnish water for other purposes than the extinguishment of fires from the main proposition in the section, or if the language admitted even of a doubt in that respect, we should doubtless hold the language of the last clause conclusive in favor of such construction. But the language of the Act is as plain and unmistakable as it could well be. The *Chief Engineer of the Fire Department* may take water from the pipes to their full capacity for the purpose of extinguishing fires during the pendency of the same, up to and until, etc. The greatest ingenuity cannot raise a doubt as to its meaning. And it is just as manifest that this is the only burden imposed upon the company up to and until the happening of the event mentioned.

It was competent for the Legislature to provide that after the event mentioned, the defendant should furnish water for other municipal uses, and that up to that time they should be compelled to furnish water for fires only; and although we can see no good reason why they should have done so, but, on the other hand, judging from the circumstances attending the legislation on the subject, we are convinced that it was intended, and at the time understood by all parties, that the defendant should furnish water for all municipal purposes; yet we cannot override the plain language of the statute, which evidently does not impose that condition upon it. If we can indulge in presumptions as to how this statute was made to read as it does, we should say that this section, as originally drafted, provided only for the use of the water of the defendant for fires, and the words "for other municipal uses" were inserted at the instance of some one who was content that they were inserted without

regard to whether they were so inserted as to have any effect or operation or not. It is not averred that water has been introduced into the city and county by any other person or persons. The city, therefore, is not entitled to the use of water from the pipes of the defendant for other purposes than the·extinguishment of fires, free of charge, by reason of the statute.

The plaintiff in this case not only sets out the facts which, as he claims, make it the duty of the defendant to furnish water for municipal uses free of charge, but avers that there has been an adjudication upon the subject, and the defendant is estopped from denying its liability in the matter. That the defendant furnished to the plaintiff water for municipal uses other than for the extinguishment of fires, and for which the plaintiff refused to pay; that thereupon this defendant brought suit against the plaintiff to recover the value of such water so furnished; that the plaintiff appeared and filed an answer in that action, and, among other things, pleaded as a defense that the defendant, by the force and effect of certain ordinances and laws, was bound to furnish such water free of charge, and that such duty and right was clearly put in issue in the pleadings and upon the trial of that action; and thereupon, in that action, it was adjudged and determined that defendant was bound and compelled by such ordinances and laws to furnish the plaintiff, free of charge, not only all water necessary for the extinguishment of fire, but necessary for all other municipal purposes, etc.

It is objected to this averment that having alleged the facts the plaintiff cannot rely upon the estoppel—and the case of *Megerle* v. *Ashe* (33 Cal. 84) is relied upon as an authority upon this point. That case only decides that a party may waive the benefit of an estoppel to which he is entitled, and that he does so when he does not rely upon it, but takes issue upon the facts upon which the adjudication is based. The most usual manner in which it has been held that an estoppel is waived, is by omitting to plead it. In this case the plaintiff has certainly not waived the benefit of the estoppel, nor is it bad pleading to state the facts upon

·which the estoppel arose.   Nor is there anything anomalous or unusual in setting up a former adjudication as an estoppel in an application for equitable relief.   There is nothing unjust or inequitable in insisting upon an estoppel by a judgment upon the same point; on the contrary, the rule is a beneficial one, and it is a matter in which the public is said to have an interest as well as the parties that there should be an end of litigation.   If the equities of the plaintiff are sufficient in other respects to entitle it to the demanded relief, its claim is not weakened by the fact that its rights in the matter have already been adjudicated in such a manner as to be conclusive upon the defendant.   The answer denies that the issue tried in the former action was the right of the parties to water for other municipal uses than for fires.   It is evident, however, that such may have been the issue in that case; and if such were the fact, we see no reason why it is not conclusive upon the defendant.

From the stipulation in the transcript, it appears that the suit was brought to obtain a determination of the question whether the defendant has the right to charge the City and County of San Francisco for water furnished for other purposes than the extinguishment of fires, and the parties have waived objections which might be made to the sufficiency of the complaint, for the purpose of presenting this question alone.   We are, therefore, not inclined to consider whether the right of the plaintiff could properly be enforced by the writ of injunction.   If the right is found to exist, we understand that all objections to the remedy are waived by the stipulation.

The demurrer should have been overruled; but as the answer denies the fact of the estoppel, the order denying the temporary injunction must be affirmed.

Judgment reversed and cause remanded, with directions to overrule the demurrer.

By Crockett, J., concurring:

I agree with Justice Temple in the opinion that the rights ·of the parties in respect to the use of the water are to be

tested exclusively by the Act of April 23, 1858, granting the franchise to Ensign and his associates. It is quite obvious that "up to and until such time as water shall be introduced into said city and county by some other person or persons," the only burden imposed upon the defendant is, that the Chief Engineer of the Fire Department, under the direction of the Board of Supervisors, shall have the right to tap the pipes of the defendants, erect hydrants, and use, free of charge, whatever water may be needed for the extinguishment of fires. It is clear that until that event happens, the city and county, by virtue of the statute, can demand nothing more than this. This section of the statute is capable of no other interpretation without doing violence to its language ; and inasmuch as it is not alleged in the complaint that the event has happened, to wit: the introduction of water into the city and county by some other person, the defendant is, as yet, subject to no other burden than that above specified. But on the happening of that event, as I construe the Act, the rights of the parties will be materially modified. Until water shall be introduced by some other person or persons, the whole burden of supplying water for the extinguishment of fires is imposed on the defendant, free of charge, even though it may require all the water which the defendant can supply. But the latter clause of the section was intended to provide that when water shall be introduced by some other person or persons, the burden of supplying water for fire shall be apportioned between the defendant and such other person or persons, in proportion to the whole quantity of water produced or introduced into the city by each ; and that the quota to be furnished by the defendant shall continue to be furnished, free of charge, and that, in addition thereto, it shall also furnish, free of charge, its quota of the water needed for "other municipal purposes."

This construction appears to me to be not only reasonable in itself, but fully warranted by the letter and spirit of the Act. So long as the whole burden of supplying *all* the water needed to extinguish fires, free of charge, was imposed on the defendant, nothing more was to be required of it.

But when it should be relieved of a portion of this burden by reason of the introduction of water by others, then it was not only to continue to furnish its quota, free of charge, but, in consideration of this diminution of the burden, it was also to furnish, free of charge, its quota of the water needed for other municipal purposes. The defendant and its counsel admit, as I understand them, that the obligation of the defendant to furnish its quota of water for the extinguishment of fires, *free of charge*, will continue after water shall have been introduced into the city by some one else. This conclusion can only be reached by conceding that, upon a fair interpretation of the Act, the quota to be furnished by the defendant was to be supplied precisely on the same terms and conditions which are annexed by the first clause of the third section to the supply of the whole, one of which is, that it shall be free of charge. This is manifestly the proper construction, for it would be absurd to hold that whilst the burden of furnishing *all* the water for extinguishing fires was imposed on the defendant, it should perform that duty free of charge, and yet that when the burden shall be diminished by imposing a part of it on others, the defendant shall be entitled to be paid for performing a *part*, when it before performed the *whole* without pay. It is too plain to admit of discussion that the quota to be furnished by the defendant for the extinguishment of fires would be free of charge; and inasmuch as there is coupled with it the additional duty of furnishing its quota "for other municipal uses," the inference is irresistible that this also was to be free of charge. On this construction of it the whole section is consistent with itself, and effect is given to every part of it without doing violence to its language. Upon any other construction the words "and other municipal uses" in the last clause of the section would be without intelligent meaning in the connection in which they are used.

I concur in so much of the opinion of Mr. Justice TEMPLE as relates to the estoppel, and in the judgment.

WALLACE, J., having been of counsel, did not participate in the decision of this cause.