52 111
82 307
52 111
94 369
95 453

DETERMINED IN

# THE SUPREME COURT,

## APRIL TERM, 1877.

[No. 5588.]

## THE SPRING VALLEY WATER WORKS *v.* THE CITY AND COUNTY OF SAN FRANCISCO.

WRIT OF PROHIBITION NOT TO ARREST LEGISLATION.—The writ of prohibition ought not to issue to arrest the progress of any legislation pending in a board authorized by the laws to legislate with respect to matters of public interest.

SAN FRANCISCO *v.* SPRING VALLEY WORKS (48 CAL. 493) EXPLAINED.—In *San Francisco* v. *Spring Valley Water Works*, 48 Cal. 493, it was decided that the Spring Valley Water Works was formed under the General Law of 1858, and that its rights, duties, and obligations were derived solely from that law.

IDEM.—In *San Francisco* v. *Spring Valley Water Works* it was also decided that, by reason of the provisions of the General Law of 1858, there are purposes for which water is furnished by the Spring Valley Water Works, for which the city and county is bound to pay the legal rates.

IDEM.—Also, that the Spring Valley Water Works is bound to furnish water to the city and county free of charge "in case of fire or other great necessity."

DUTY OF SPRING VALLEY WATER WORKS.—Primarily, it is the duty of the Spring Valley Water Works to furnish to all the inhabitants—the men, women, and children—of the city and county (the rates fixed according to law being paid) water for family uses; being water for drinking, lavation, for domestic animals, and for other like domestic uses.

IDEM.—For water furnished for such "family uses" to those of the inhabitants to whom it is the duty of the city and county to provide all or some of the necessaries of life—as prisoners and the occupants of charitable and educational institutions—the city and county is bound to pay the rates established in accordance with law.

IDEM.—The Spring Valley Water Works are not bound to furnish water for

, any other purposes, unless the obligation is imposed upon that Company by the clause of the statute which requires water companies to furnish water to the city and county "in case of fire or other great necessity, free of charge."

Idem.—It is the duty of the Company to furnish water free of charge for fires, and this includes the furnishing of water free for engines and engine houses.

Idem. — The water is to be furnished to the *inhabitants* for family uses on payment of rates; to the city and county government free for all purposes for which it may be necessary and proper in the exercise of its police and governmental functions, being for other purposes than the "family uses" of , individuals to whom the city and county is under obligations to furnish water.

Idem.—The word "great" in the statute does not qualify the word "necessity," so as to limit the furnishing of water free to cases of rare and casual demands.

Construction of Franchise.—Language in a statute conferring franchises on a corporation, which is not free from doubt, is to be construed to the benefit of the public rather than to that of the corporation.

Duty of Spring Valley Water Works.—Since, by the terms of the statute, the corporation is entitled to charge only for water supplied for "family uses," there is no hardship in compelling it to furnish the city and county "to the extent of its means," free of charge, all water necessary for watering streets, public squares and parks, for flushing sewers, and for all like purposes beneficial to the public, and in aid of the health and good government · of the people of the city and county.

This was an original application to the Supreme Court for a writ of prohibition. The petition represented that the Supreme Court in *Spring Valley Water Works* v. *City and County of San Francisco*, 48 Cal. 493, had decided that the applicant was not bound in law to furnish water free to the respondent except for "fire or other great necessity," which did not include ordinary municipal purposes; and that, notwithstanding such decision, the Board of Supervisors of the City and County of San Francisco had passed to print, and were threatening to finally pass an ordinance commanding the Mayor to cause connections to be . made with the pipes and mains of petitioner for the purpose of taking water for the city for ordinary municipal uses, without paying therefor. That the ordinance authorized the Mayor to call to his assistance, if necessary, the police force of the city and county, against whom the petitioner would be powerless. That the passage of the said ordinance was an act in excess of the jurisdiction of the Board. The prayer of the petition was for a writ of prohibition, commanding the respondents and all persons acting under them to desist and refrain from interfering

with the petitioner in the exercise of its right to cut off, and in cutting off, the water from its mains or pipes from any place where the same is taken for ordinary municipal purposes, except for the extinguishment of fires, unless the respondent should first make arrangements to pay therefor; and from any and all attempts to make connection with the pipes and mains or works of petitioner for the purpose of taking water therefrom without the knowledge and consent of petitioner, and to desist and refrain from passing any ordinance authorizing or empowering the Mayor or any other officer or person to make such connections for such purposes, except for the extinguishment of fires, without the consent of petitioner. [For copy of the resolution and ordinance, see *post*, p. 134.]

The respondent, at the time appointed to show cause why the writ should not issue, answered that the petitioner was by law in duty bound to furnish water for all municipal purposes free of charge, and having cut off connections with the water mains at places where water was needed by the respondents, it was the duty and within the power of the respondents to restore the connection and take the water. [For further litigation on this subject, see *post*, pp. 126, 132.]

*Charles N. Fox, Lloyd & Newlands*, and *J. P. Hoge*, for the Petitioner.

1. The writ of prohibition, under our statutes, is the counterpart of *mandamus* (Code of Civil Procedure, secs. 1102, 1103); it may be issued to an inferior tribunal, corporation, board, or person, and it arrests such proceedings as are without or in excess of the jurisdiction of such tribunal, corporation, board, or person. *Mandamus* is not confined to judicial acts, and prohibition, its counterpart, is not confined to the restraint of judicial acts only. In *Fox v. Board of Supervisors*, 49 Cal. 563, the Supreme Court issued the writ of prohibition to the Board of Supervisors of San Mateo County, to prohibit them from calling an election, which is not a judicial act.

So also as to *certiorari*. (*Robinson v. Board of Supervisors of Sacramento*, 16 Cal. 208; *People v. Supervisors of El Dorado*

*County*, 8 Cal. 58 ; *Murray* v. *Supervisors of Mariposa County*, 23 Cal. 494 ; *Miller* v. *Supervisors of Sacramento*, 25 Cal. 93 ; *Keys* v. *Marin County*, 42 Cal. 253 ; *City* v. *Albright*, 20 N. J. L. 645 ; *State* v. *Jersey City*, 29 N. J. L. 170 ; *State* v. *City of Patterson*, 34 N. J. L. 163.)

2. It has been adjudged by this Court that the petitioner is under no obligation to furnish water to the city free of charge, except for the extinguishment of fires. (*San Francisco* v. *Spring Valley Water Works*, 48 Cal. 514.)

This case is, therefore, *res judicata.* In the case cited, it was admitted that if plaintiff was entitled to water free of charge, she was entitled to the injunction. This Court held she was not so entitled to the water, and the injunction was, therefore, denied. All the merits of this question of free water for the city were squarely before the Court, with the grounds upon which the claim was based ; the judgment was rendered on the merits, and now the parties " cannot canvass the same question again in another action, although, perhaps (and even if) some objection or argument might have been urged upon the first trial, which would have led to a different judgment." (Freeman on Judgments, sec. 249.)

3. The purposes for which the city claims this water are purposes of ordinary daily use—purposes of such a character that the city is bound to anticipate the necessity for a supply, and prepare itself to meet that necessity. That the water for those purposes is a necessity no one will deny ; that it is a " great necessity " within the meaning of the statute upon which the counsel for the city relies, seems to us a proposition too absurd for argument. The necessity may be great, but if it is constant, frequent, or regular, so that it can be anticipated and provided for, it does not come within the purview of that statute, or justify the city in violating that fundamental law of right, which Mr. Cooley, in his excellent work on Constitutional Limitations, says stands above constitutions—the right to acquire, have, possess, and enjoy property. (Cooley on Constitutional Limitations, secs. 36, 354.)

*W. C. Burnett* and *John F. Swift*, for Respondent.

1. The writ of prohibition is a prerogative writ, whose only office is to restrain subordinate Courts and inferior *judicial* tribunals from exceeding their jurisdiction. (*Quimbo Appo* v. *The People*, 20 N. Y. 540; *Thomas* v. *Mead*, 36 Mo. 232; *Washburn* v. *Phillips*, 2 Metc. 296; *People* v. *Supervisors of Queen's County*, 1 Hill, 200.)

2. The litigation had in *The City and County of San Francisco* v. *The Spring Valley Water Works*, 48 Cal. 493, left the question of great necessity open. It is not an estoppel in this case to the claim of the city for water free for ordinary municipal purposes.

The claim of the city in that suit was that she was entitled to water free of charge for all municipal purposes, and the object of that suit was to " restrain the Spring Valley Company from cutting off from the plaintiff the supply of water flowing in the pipes of the defendant, and used by the plaintiff for municipal purposes and uses." The theory of the city's case, then, was that she was entitled to the water under Order No. 46 from the Spring Valley Water Company as successor in interest to the Bensley Company. The Water Company in their answer stood squarely upon the Ensign Act and the San Francisco Water Works Act as modified by the effect of the special grant to Ensign and his associates under the Ensign Act. The case was tried in the District Court, and judgment was rendered for the defendant, when the plaintiff appealed to the Supreme Court, where the judgment was reversed on the ground that under sec. 3 of the Ensign Act it was not the duty of the Water Company to furnish water free to the city except for the extinguishment of fires during the pendency thereof, *until the introduction of water by another company*, which conditions did not appear from the complaint to have happened. (See 39 Cal. 474.) In point of fact the contingency had happened, and the pleader only was at fault. When the case came back the complaint was amended, and the necessary allegation introduced. Then a trial was had, but the Court decided again for the defendant. Another appeal was taken, and the Supreme Court

held that the liability of the Company was in full force, and it must furnish water free of charge for all municipal purposes. And thus the case would have been finally determined, but for the application for a rehearing in which the new point was for the first time presented that the Ensign Act was unconstitutional and void because a grant of corporate powers by special act, and that the Company held under the General Law of April 22nd, 1858. A rehearing was granted, and the Court, taking that view of the case, affirmed the judgment below. (48 Cal. 493.) Yet it is now claimed for the Water Company that, notwithstanding those special acts have been held to be void, when it comes to define the duty of the Company to the City and County of San Francisco, this Court has in some mysterious way settled the law to be that the city is only entitled to water free of charge for the *extinguishment of fires during the pendency thereof*—not the words of the general law, but of the extinct " Ensign Act." In a word, the first portion of sec. 3 of the defunct Ensign Act is still resorted to when the Company desires to shirk a burden, although it was to escape the effect of the final part of the same section that they raised the point, the decision of which destroyed that franchise.

3. The water, the delivery of which is herein sought to be prohibited, is due to the city under sec. 4 of the Company's Charter (Act of April 22nd, 1858) as water in case of fire, or *other great necessity*, free of charge. The phrase " fire, or other great necessity," means all water absolutely indispensable to a well governed city—water for extinguishment of fires, for the prisons, hospitals, schools, public buildings, parks, gardens, etc. —such uses as could not be dispensed with in a modern city of a civilized country.

At the argument counsel united in a request that the Court would construe the words " in case of fire, or other great necessity," occurring in the Act of 1858, fourth section, which is as follows: " All corporations formed under the provisions of this act, or claiming any of the provisions of the same, shall furnish pure, fresh water to the inhabitants of such city and county, or city or town, for family uses, so long as the supply permits, at reasonable rates, and without distinction of persons, and shall

furnish water to the extent of their means to such city and county, or city or town, in case of fire or other great necessity, free of charge."

By the Court, McKinstry, J.:

At the common law the writ of prohibition was issued on the suggestion that the cause originally, or some collateral matter arising therein, did not belong to the inferior jurisdiction, but to the cognizance of some other Court. (3 Shars. Blackst. Com. 112.) It was an original remedial writ provided as a remedy for encroachment of jurisdiction; its office was to restrain subordinate Courts and inferior *judicial tribunals* from exceeding their jurisdiction. (*Quimbo Appo* v. *The People*, 20 N. Y. 540; *Thomas* v. *Mead*, 36 Mo. 232.)

If by the Code of Civil Procedure the Courts of this State are empowered to issue the writ to municipal corporations or to public boards clothed with limited governmental functions, it still retains its character as a writ in the nature of a *prerogative writ*, to be issued only in the sound discretion of the Court. It should be granted or withheld according to the circumstances of each particular case, and, like other prerogative writs, should be used with great caution and forbearance. (*Washburn* v. *Phillipps*, 2 Met. 296.)

In my opinion, the writ ought not to issue to arrest any *legislation* pending before a body authorized by the Constitution and laws to legislate with reference to matters of public interest. Error committed by such bodies cannot usually be corrected by resort to this extraordinary writ without great public inconvenience. (*People* v. *Supervisors of Queens.* 1 Hill, 200.)

I know of no way in which it can be shown that the members of the Board of Supervisors *threaten* (in their official capacity) to pass an ordinance, and it must be presumed that the members of that legislative assembly will fully consider the question of the *power to pass* the order, as well as the merits of the order itself. It would not be a proper exercise of the sound discretion of the Court to prohibit any consideration of a measure which, after discussion, might by amendment be deprived of its objection-

able features, merely because if passed finally as "passed to print," it would be in excess of the power conferred on the Board by the city charter.

The parties have requested the Court to place an interpretation upon the language of the fourth section of the Act of 1858, which is as follows: "And shall furnish water to the extent of their means to such city and county, or city, or town, in case of fire, or other great necessity, free of charge."

It is claimed by petitioner that it has been adjudged by this Court that the city and county is not entitled to water from the pipes and mains of petitioner, "free of charge," for any municipal purpose, except for the extinguishment of fires; that such is the effect of the judgment in *San Francisco* v. *Spring Valley Water Works*, 48 Cal. 493. A reference to the report of that case will show that the question discussed in the briefs, and the only question considered in the opinion of the Justices, was the validity or constitutionality of the "Ensign Act." It seems to have been assumed by counsel and Court that a determination that the "Ensign Act" was void must involve a complete reversal and not a modification of the judgment of the District Court. Counsel did not there indicate their respective views (in case it should be held that water corporations were not compelled to furnish water for all purposes) as to the purposes for which the company might charge for the water, and as to the purposes for which it might be compelled to furnish water free of charge. It is said, however, that inasmuch as the complaint was filed by the city and county to enjoin a threat on the part of the Spring Valley Water Company to cut off water for all purposes, except in case of fire, and as judgment was rendered for defendant, such judgment necessarily involved a determination that the company was entitled to refuse to furnish water free of charge, for any other purpose than the extinguishment of fires. It is plain from the opinions therein rendered that no such result was contemplated by the Judges. In the opinion, on rehearing, of Mr. Justice Crockett, concurred in by Mr. Justice Niles, and in this particular by Mr. Justice Rhodes, the obligation of the Spring Valley Company is described as being an obligation to furnish water free of

charge "in case of fire *or other great necessity*" (page 527). And Mr. Justice McKinstry, in his concurring opinion, (page 531) says: "The General Law required all water companies to furnish water to the extent of their means, and free of charge, to the city or town to which water was conducted 'in case of fire or other great necessity.' I express no opinion as to the precise meaning of the phrase 'other great necessity.' On the former appeal, and before I came to the bench, it was held by all the Justices qualified to sit in this case, that these words did not include every municipal purpose."

Under these circumstances, even if the technical effect of the judgment in *San Francisco* v. *Spring Valley Water Works* is broader than the views expressed by the Justices would warrant, I am of opinion that the case should be held to be authority only to the extent of a determination that the company is not bound to furnish water to the city free for *all purposes*.

But the claim of the city and county, in the action of *The City and County of San Francisco* v. *The Spring Valley Water Works*, was based on an assertion that the rights and duties of the defendant, so far as furnishing water to the city is concerned, were created and controlled by the Ensign Act, and by the transfer from the City Water Works to the Spring Valley Company; and that by virtue of said act and transfer the obligation was imposed on the Spring Valley to furnish water for *all purposes*. The pleading on the part of the plaintiff did not allege that there were any "great necessities," for which the water should be furnished free; and in the absence of such allegation the judgment of the Court only determined that the city and county was not entitled, as it claimed, to free water for all purposes.

The decision and judgment did, however, determine that the defendant was bound to furnish water to the city and county free of charge "in case of fire or other great necessity."

The meaning of these words is still an open question.

It is claimed on the one hand that, applying the maxim, *noscitur a sociis*, the words "other great necessity" are to be construed as referring to necessities of the same character as "fire"; those which are the offspring of sudden emergencies; such as

may arise out of events which, while they might be anticipated as possibilities, are in the nature of casualties; the time of whose occurrence, and the extent of the demand for water which they might create, being equally uncertain.

On the other hand, it is said that the adjunct "great" adds no meaning to the word "necessity"; that, in the midst of the civilization of this age and country, every appropriate use going to supply the comforts or luxuries of men, and to afford sanitary protection, is a necessary use of water, within the meaning of the statute.

The claim of the petitioner, as above stated, is plausible and ingenious. But I think too much force is attributed to the word "fire," which is used in the statute as the illustration, coming first to mind, of a case in which the *municipality* might require water, as distinguished from the needs of the *inhabitants*. And the like error (if it be error) on the part of the respondent is in overlooking the fact that there is no provision in the statute for furnishing the city government with water for "family uses," and in the assumption that those persons immediately under the care of the local government—being such as are restrained of their liberty by penal laws, or given the benefit of eleemosynary and educational establishments—are withdrawn from the "inhabitants," who are to be supplied with water at reasonable rates for family uses.

The fourth section of the Act of 1858 provides: "All corporations formed under the provisions of this act, or claiming any of the privileges of the same, shall furnish pure fresh water *to the inhabitants* of such city and county, or city, or town, *for family uses*, so long as the supply permits, at reasonable rates and without distinction of persons, upon proper demand therefor, and shall furnish water to the extent of their means to such *city and county, or city, or town*, in case of fire, or other great necessity, free of charge."

The primary purpose for which water is to be furnished by these companies is "family uses." For supplying water for these uses they are authorized to charge tolls or rates. The family uses are such as are appropriate to the individual needs of the members of a household, and to the needs of the house-

hold in its collective capacity; it is the *inhabitants*, the men, women, and children, who are to be supplied with water for family uses—domestic uses, drinking, lavation, etc. The occupants of the jail — keepers and prisoners — have such "family uses," as well as the best ordered family of parents, children, and servants. The fact that the city and county, as an incident to its power and duty to establish a jail, has the right and obligation to furnish necessary water for keepers and prisoners, does not change the nature of the uses for which such water is supplied, which are still "family uses." These remarks will apply to the hospitals, poor-houses, schools, and other institutions to which water is supplied to the occupants or inhabitants for "family uses."

We cannot refuse to observe the antithesis: The *inhabitants* are to be furnished water for family uses "at *reasonable rates*"; the city and county for *fires* and *other great necessities* "free of charge." ' After providing that the companies shall charge for water furnished the inhabitants, the act imposes on them the duty of supplying, to the extent of their means, the necessities of the local government, free of charge. It is evident that the necessities thus mentioned are of a different class from those of the inhabitants, as members of families. The extinguishment of fires is under the control of the city government, or of a department of the city government in San Francisco, and is always under the direction of the local government; so is, or may be, the flushing of sewers, the sprinkling of streets, and the watering of parks. These things are certainly necessities in the ordinary signification of the word; the word is not to be given the more narrow signification of the absolutely *indispensable;* for this would be to deprive it of all practical force or meaning. It is for uses of the character last mentioned—such as are incidental to the direct employment by the municipality of its governmental or police powers as distinguished from the family uses of a portion of the inhabitants, for which the city may be called on to pay—that all water companies are required to furnish water free of charge. It is impossible further to classify these uses, or to say that one of them is a "greater" necessity than another, and under the well established rule that when there is

even serious doubt in respect to the interpretation of a law conferring franchises on a corporation or person, it should be construed against the party claiming the privilege; and for the benefit of the public I am constrained to say that it is the duty of the Spring Valley Water Works to furnish water free to the city and county in case of fire, and also in case it is demanded for irrigating the parks and squares, watering the streets, flushing the sewers, and in case of any other demand based on a requirement which is incidental to the discharge by the Supervisors of their duty as local legislators—except where it is to be used by human beings for family purposes.

Whether a possible case might arise in which a grossly improvident employment of the water for a purpose not necessary to the government of a well regulated city might require the Courts to intervene, it is not now requisite to decide.

It accords with the principle of construction above referred to, to hold that the words "in case of fire" imply more than that the water must be turned on after a conflagration has actually commenced, and include the obligation of supplying water for such preventive measures as may be adopted by the fire department; hence that water must be supplied free for all ordinary uses of the engines and engine-houses.

The conclusion is that the Spring Valley Water Company may charge the ordinary rates (when they shall have been fixed in the manner required by the General Law) for the water supplied for drinking and culinary purposes; for purposes of lavation, and for like domestic uses to the inhabitants or occupants of the various institutions, penal or charitable, established by or under the control of the city and county government; to the public schools and to the public offices; and that it is the duty of the corporation to furnish water free (to the extent of its means) for the extinguishment of fires, and to the Fire Department, and for all other purposes for which it may be demanded by the authorities of the city and county in discharge of their direct duties as governmental agents—being such uses as are distinguishable from "family uses" as hereinbefore defined.

The writ must be quashed and the proceedings dismissed, and it is so ordered.

CROCKETT, J., concurring specially:

I concur. In the case of *San Francisco* v. *Spring Valley Water Works,* 48 Cal. 493, it was decided that the rights and powers, the duties and obligations, of the water company must be determined under the Act of April 22nd, 1858, under which it was incorporated, or under such general laws as might subsequently be enacted amendatory thereof; and in this connection it may be observed that the Codes have not modified that act in any particular material to the present inquiry. It may, therefore, be assumed, for the purposes of this decision, that the Act of 1858 has not been materially changed by subsequent legislation.

It is a well settled rule that private corporations can exercise no powers but those expressly granted, and such as are necessarily incidental thereto. Keeping this rule in mind, it becomes material to inquire in what cases the water company is entitled to charge for water, and in what cases it must furnish it free of charge. This question must be determined by the fourth section of the Act of April 22nd, 1858, which defines the rights and duties of the company in this respect. It can make no charge for water unless authorized by this section, and is not required to furnish it free of charge except in the cases specified therein. The language of the section is: "All corporations formed under the provisions of this act, or claiming any of the privileges of the same, shall furnish pure fresh water to the inhabitants of such city and county, or city, or town, *for family uses,* so long as the supply permits, at reasonable rates, and without distinction of persons, upon proper demand therefor, and shall furnish water, to the extent of their means, to such city and county, or city, or town, in case of fire or other great necessity, free of charge." There is no provision authorizing the company to make any charge except for water furnished to the "*inhabitants* " for " family uses." For such uses, every inhabitant, whatever may be his status, is entitled to water at reasonable rates; but the company is not bound to furnish it free of charge. What, then, are "family uses," in the sense in which that phrase is employed in the statute? Are only *families,* in the strict

sense of that term, entitled to use the water at reasonable rates? Or was the phrase "family uses" intended only to designate the general purposes for which every inhabitant was entitled to use the water? The latter is clearly the correct interpretation; and every inhabitant, whether he be a member of a family or not, is entitled to water for "family uses"— that is to say, for the ordinary domestic uses to which water is usually applied in families. It results that a culprit confined in jail, a pauper at the almshouse, a patient at a public hospital, or a pupil at a public school, is entitled to water for "family uses," in the sense already defined, at reasonable rates. But in respect to these, and perhaps other classes of inhabitants, the city and county government stands *in loco parentis*, and has undertaken to supply their necessary wants, including water for "family uses."

But as the water company is not bound to furnish water for such uses free of charge, it results that the city and county must pay for it, at reasonable rates, to be fixed in the method provided by law. It is, however, by the very letter of the statute, incumbent on the company to furnish water to the city and county, free of charge, "in case of fire or other great necessity." The company admits its obligation to furnish water free of charge for the extinguishment of fires, but contests the right of the city and county to demand free water for any other purpose, on the ground that the question is *res judicata*, and that the judgment on the former appeal is conclusive on this point. But I agree with Justice McKINSTRY, that this proposition is not tenable; and I can add nothing to the force of his reasoning on this point. But it is further contended that if the question be still open, the term "other great necessity" has no application to the ordinary daily wants of the municipal government, for water, for the usual and necessary municipal purposes, as for example for sprinkling the streets, flushing sewers, irrigating the public parks, and other similar uses. It is said that the "other great necessity" contemplated by the statute must be some sudden and unforeseen calamity, some unexpected emergency, threatening the health, or lives, or property of the inhabitants. If this be the correct solution of the question, the result will be, not only that the company is under no obligation

to furnish water free of charge for the ordinary daily wants, however urgent, of the municipal government, but further, that the company has not the legal capacity to contract to furnish it for these purposes, for a consideration to be paid by the municipality.

As we have already seen, the company can exercise no powers not expressly granted, or such as are necessarily incidental thereto; and it has been further shown, that under its act of incorporation, it has not the legal capacity to charge, except for water furnished for "family uses."  It results, that it can make no valid contract with the municipal government to furnish water for a consideration, to be paid, for ordinary municipal purposes, such as sprinkling streets, flushing sewers, irrigating public parks, and the like.  On this construction of the statute, the municipal government would be left wholly without water for its ordinary daily municipal uses.  The company would not be bound to furnish it free of charge, and could not make a valid contract to furnish it for a consideration.  Nothing short of the plainest requirements. of the statute would justify us in giving it a construction which would work this result.  The rule in construing statutes granting franchises to private corporations, is, that all doubts are to be resolved in favor of the public.  The meaning of the phrase " other great necessity " in the connection in which it is employed in the statute, is certainly not free from doubt.  It represents a striking illustration of that kind of vague, crude legislation which so often perplexes the Courts.  But, acting upon the rule just adverted to, that in such cases all doubts are to be resolved in favor of the public, I acquiesce in the construction put upon this phrase by Mr. Justice McKinstry.

RHODES, J., concurring specially:

I concur in the judgment, and also in that portion of the opinion of Mr. Justice McKinstry which is devoted to the discussion of the writ of prohibition, except in so far as it holds the writ to be a prerogative writ.  In my opinion, it is a statutory writ.  Its scope, purpose, and the class of cases in which

it may issue, are defined and prescribed by the Code. When a party presents a proper case he is entitled to the writ, and the Courts have no right to deny him that remedy, in the exercise of some undefinable judicial discretion, when no valid legal objection is presented.

I am not prepared, in this case, to express an opinion upon the construction to be given to the words " and shall furnish water to such city and county, or city, or town, in case of fire, or other great necessity, free of charge."

The determination that the writ would not lie is a final disposition of the action, and the announcement of conclusions upon other questions discussed by counsel would amount to mere *dicta.* Nor am I satisfied that, as between the plaintiff and the city, the construction of the words above cited was not conclusively settled by the judgment in *San Francisco* v. *Spring Valley*, 48 Cal. 493.

For these reasons I decline to express any opinion upon the questions discussed by Mr. Justice McKINSTRY, other than those relating to the writ.

Mr. Chief Justice WALLACE, having been of counsel for the City and County of San Francisco in the litigation between it and the water company, declined to express an opinion in this case.