## Case No. 6,235.

### HAWES v. CONTRA COSTA WATER CO. et al.

[5 Sawy. 287; 7 Reporter, 100.] [1]

Circuit Court, S. D. California. Oct. 30, 1878.[2]

STATE STATUTES — AUTHORITATIVE CONSTRUCTION-OBITER DICTUM—WATER COMPANIES—STATUTE CONSTRUED.

1. The construction by the highest court of a state of a statute of the state which does not trench upon any of the powers of the national government, or upon any right guaranteed or protected by the constitution of the United States, is authoritative and conclusive in the national courts.

2. Where the record in an action of which the court has jurisdiction fairly presents two points, upon either of which the decision might turn, and the court fully considers and determines both, the decision of neither can be regarded as an obiter dictum, and the judgment is authoritative on both points.

3. Under the clause of the statute of California authorizing the formation of water companies to supply cities with pure water, which requires the corporation to supply water free of charge for extinguishing fires, and other great necessities, corporations organized thereunder, after supplying certain preferred uses, are bound to the extent of their means, to furnish the cities supplied, with water free of charge, for irrigating public parks and squares, flushing sewers, and for all other municipal purposes, except for family and analogous uses.

[Cited in Reclamation Dist. No. 108 v. Hagar, 4 Fed. 369.]

[See note at end of case.]

In equity.

S. M. Wilson, for complainant.

L. D. Latimer and Vrooman & Davis, for the city of Oakland.

SAWYER, Circuit Judge. This is a bill in equity by [Loring P. Hawes] a stockholder of the Contra Costa Water Company, a corporation formed under the act of 1858, to supply the city of Oakland and other places with pure water, against the corporation, its officers, and the city of Oakland, to restrain said corporation from furnishing, and said city of Oakland from taking; water without charge for watering public squares, parks, or flushing sewers, or other like municipal purposes. The city of Oakland demurs to the bill. The only question presented on the merits, arises upon the construction of a provision in the fourth section of the act of 1858, under which the water company was organized, which,

---

[1] [Reported by L. S. B. Sawyer, Esq., and here reprinted by permission. 7 Reporter, 100, contains only a partial report.]

[2] [Affirmed in 104 U. S. 450.]

after giving precedence to certain specified uses, provides that corporations organized under the act, "shall furnish water to the extent of their means, to such city and county, or city, or town, in case of fire or other great necessity, without charge." St. Cal. 1858, p. 219. The question is, whether the water company, under the words, "other great necessity," is bound to furnish, without charge, water for irrigating public squares and parks, flushing sewers, and other like municipal purposes. The counsel for the city of Oakland insist that the construction of this act has been settled in favor of the city by the supreme court of California; and that this construction by the highest court of the state of a statute of the state, is controlling in the national courts. They rest upon this construction, and decline to regard the question as an open one, or to argue the point as an original proposition. This being a state statute in no way trenching upon any of the powers of the national government, or any rights guaranteed or protected by the constitution of the United States, a construction by the highest court of the state would be controlling and conclusive in the national courts, as has often been held by the supreme court. Walker v. State Harbor Com'rs, 17 Wall. [84 U. S.] 650; Bailey v. Maguire, 22 Wall. [89 U. S.] 230; Christy v. Pridgeon, 4 Wall. [71 U. S.] 196; Leffingwell v. Warren, 2 Black [67 U. S.] 603; South Ottowa v. Perkins, 94 U. S. 260; Railroad Tax Cases, 92 U. S. 576. The complainant insists that the construction relied on by the defendant is but a dictum, or if otherwise, that the supreme court had decided the same point the other way in a prior case, and that this court is authorized to exercise its own judgment in the matter, the point not being yet settled by the state courts. It, therefore, becomes necessary to inquire whether there has been an authoritative construction by the state courts of the words, "other great necessity." The first case cited is City and County of San Francisco v. Spring Val. Water Works, 39 Cal. 473. This was an action by the city of San Francisco against a corporation organized under the same act to supply San Francisco with water, in which the complainant, the city of San Francisco, sought to restrain the defendant from cutting off the city from the use of water without charge for watering the public plazas and all municipal uses other than extinguishing fires. The district court sustained a demurrer and dismissed the bill. In that case, the discussion and decision in the supreme court turned upon the language of another act, passed at the same session, granting certain rights to George Ensign and others, and known as the "Ensign Act" (St. 1858, p. 254), the rights under said act having become vested in the defendant in the action. The supreme court held that the rights of the parties must be determined by the provisions of the Ensign act; and that under its provisions, which are different from

those now in question, the defendant was only obliged to furnish water free of charge for the purpose of extinguishing fires until water should be introduced by some other party; and as it did not appear that any other party had introduced water, it was only required to furnish water free of charge to extinguish fires. Had this been all there was in the bill, the judgment of the district court would, doubtless, have been affirmed. But the bill also set up, as matter of estoppel, facts showing that the rights of the parties had been adjudicated against defendant in a former action. The court held this matter to be well pleaded, and if true, to constitute a valid estoppel, and apparently, on that ground, held that the demurrer should have been overruled. The judgment on this point was accordingly reversed, with directions to overrule the demurrer. But since there was an answer filed with the demurrer denying the matter of estoppel, the order denying a temporary injunction was affirmed. There was no construction whatever of the language of the act now in question, nor does it appear to have been considered or discussed by either court or counsel.

The case having been remanded to the district court, and the complaint having been amended so as to show that water had in fact been introduced by another corporation, the San Francisco City Water Works, whose rights had been assigned to defendant, another trial was had, and judgment again rendered for defendant, and a second appeal taken. On the first appeal, and on the first hearing of the second appeal, "it was assumed by court and counsel that the rights and obligations of the defendant were to be ascertained by reference to the act of April 23, 1858 (the Ensign act). City and County of San Francisco v. Spring Val. Water Works, 48 Cal. 509, 514. A rehearing having been granted, the opinion delivered on the first hearing of the second appeal is not reported. But on the rehearing, a new point was made that the Ensign act, upon which the former decisions turned, was unconstitutional and void; and this point the court sustained in an elaborate opinion. The defeated party not being satisfied, another petition for rehearing was filed; and the court again at the following term discussed the point at length in denying the petition—two of the justices delivering opinions maintaining the unconstitutionality of the act, and one justice a dissenting opinion. In these opinions the only points discussed are the unconstitutionality of the Ensign act; and the point, that, conceding it to be unconstitutional, the defendant was still liable to supply water without charge for all municipal purposes, except "sprinkling streets," as successor of the San Francisco City Water Works, under the city ordinances by which that corporation acquired its rights. The court did not discuss the meaning of the clause in the general act, "in case of fire, or other great necessity," nor do counsel appear

to have discussed the meaning of that clause. At the conclusion of the opinion on the rehearing, it is said, it is true, that "tested by the general law under which the defendant was organized it is under no obligation to furnish water to the city and county free of charge, except for the extinguishment of fires during the pending thereof." The learned justice must have labored under some misapprehension here, for the phrase, "for the extinguishment of fires during the pendency of the same," is not in the general statute, but in the Ensign act (St. 1858, p. 255, § 3),— the statute held to be unconstitutional. The clause in the general act is "in case of fire or other great necessity." Id. p. 219, § 4. But, be this as it may, there is here no attempt to define the words "other great necessity." In the second opinion of the same learned judge—the opinion on denying the second petition for rehearing—the words "in case of fire or other great necessity," are casually referred to in discussing the point as to the liability of defendant under the former city ordinances as successor of the San Francisco City Water Works. But no attempt is made to construe them. 48 Cal. 525. The only other allusion to the phrase is by Mr. Justice McKinstry in his concurring opinion; and, apparently, for the purpose of cutting off any pretense that might afterward be made that the court had construed the clause. He says: "I express no opinion as to the precise meaning of the phrase 'other great necessity.' On the former appeal, and before I came to the bench, it was held by all the justices qualified to sit in this case, that these words did not include every municipal purpose. I shall assume that the construction given by the court is correct." 48 Cal. 531. I do not myself find any such express holding in the reported opinion on that appeal, or any allusion whatever to the clause. The justices probably entertained that opinion, but may not have found it necessary to express it in view of the point upon which the decision was rested. It is now insisted by the complainant, that since the judgment of the district court was affirmed, the judgment necessarily determines that the words, "other great necessity," do not embrace the municipal uses now being supplied to the city of Oakland free of charge as stated in the bill. It is evident from what has already been said, that the court did not intend to give a specific construction to the clause, "other great necessity." This inference arises from the questions actually discussed by both counsel and court, and the points expressly decided. Besides, that idea is expressly excluded by the language of Mr. Justice McKinstry. The matter, it must be confessed, is left in a somewhat uncertain condition, technically speaking; but upon a careful consideration of the several cases as reported the following seems to be the result. The city sought to restrain the water company from cutting off water free of charge

for all municipal purposes except extinguishing fires, and this was the question litigated; while the court was of opinion that there were some municipal purposes for which defendant was entitled to charge, and on that ground held the city not entitled to the injunction sought, without determining for what specific purposes a charge might be made, or for what specific purposes other than extinguishing fires, water must be furnished free of charge—that question not having been presented by counsel in their numerous and voluminous arguments. And so the court itself held, when the question was next presented in the case which will now be considered.

After the decisions in these cases, the Spring Valley Water Works threatened to shut off water before then supplied for watering plazas and like municipal uses, and the board of supervisors passed a resolution empowering and directing the mayor in that case to make connections with the pipes of the water company wherever water should be required for municipal purposes; and an ordinance was introduced with similar and further provisions, and passed to print. Whereupon the Spring Valley Water Works presented a petition to the supreme court alleging that it was only bound to supply water free of charge for extinguishing fires, and setting up the prior litigation before considered, claiming that the judgment in said case settled the rights of the parties in favor of the company, and that the matter was res adjudicata; also, the subsequent acts of the board of supervisors, including the threatened passage of the ordinance so introduced, and praying a writ of prohibition. The decision has not yet been reached in the official series of the California Reports, and I cite from the copy reported in 14 Pac. Law Rep. 218. (Since reported: Spring Val. Water Works v. City and County of San Francisco, 52 Cal. 112.) A certified copy of the petition and the printed arguments of counsel in the case have been furnished me. In deciding the case, the court briefly hold that the writ of prohibition retains its character in the nature of a prerogative writ to be issued in the sound discretion of the court, and that in this case it would not be a proper exercise of discretion to issue it. The opinion of the court then proceeds as follows:

"The parties have requested the court to place an interpretation upon the language of the fourth section of the act of 1858, which is as follows: 'And shall furnish water to the extent of their means to such city and county, or city, or town, in case of fire, or other great necessity, free of charge.' It is claimed by petitioner that it has been adjudged by this court, that the city and county is not entitled to water from the pipes and mains of petitioner 'free of charge' for any municipal purpose, except for the extinguishment of fires; that such is the effect of the judgment in City and County of San Francisco v. Spring Valley Water Works, 48 Cal. 493. A reference to the report of that case will show that the question discussed in the briefs, and the only questions considered in the opinions of the justices, was the validity or constitutionality of the 'Ensign Act.' It seems to have been assumed by counsel and court that a determination that the 'Ensign Act' was void must involve a complete reversal, and not a modification of the judgment of the district court. Counsel did not then indicate their respective views (in case it should be held that water corporations were not compelled to furnish water for all purposes), as to the purposes for which the company might charge for the water, and as to the purposes for which it might be compelled to furnish water free of charge. It is said, however, that inasmuch as the complaint was filed by the city and county to enjoin a threat on the part of the Spring Valley Water Company to cut off water for all purposes, except in case of fire, and as judgment was rendered for defendant, such judgment necessarily involved a determination that the company was entitled to refuse to furnish water free of charge for any other purpose than the extinguishment of fires. It is plain from the opinions therein rendered that no such result was contemplated by the judges. In the opinion, on rehearing, of Mr. Justice Crockett, concurred in by Mr. Justice Niles, and in this particular by Mr. Justice Rhodes, the obligation of the Spring Valley Water Works is described as being an obligation to furnish water free of charge 'in case of fire or other great necessity.' Page 527. And Mr. Justice McKinstry, in his concurring opinion (page 531), says: 'The general law required all water companies to furnish water to the extent of their means, and free of charge, to the city or town to which water was conducted "in case of fire or other great necessity." I express no opinion as to the precise meaning of the phrase "other great necessity."' On the former appeal, and before I came to the bench, it was held by all the justices qualified to sit in this case that these words did not include every municipal purpose.

"Under these circumstances, even if the technical effect of the judgment in City and County of San Francisco v. Spring Valley Water Works, is broader than the views expressed by the justices would warrant, I am of opinion that the case should be held to be authority only to the extent of a determination that the company is not bound to furnish water to the city free for all purposes. But the claim of the city and county, in the action of the City and County of San Francisco v. Spring Valley Water Works, was based on an assertion that the rights and duties of the defendant, so far as furnishing water to the city is concerned, were created and controlled by the Ensign act, and by the transfer from the city water works

to the Spring Valley Water Works; and that by virtue of said act and transfer the obligation was imposed on the Spring Valley Water Works to furnish water for all purposes. The pleading on the part of the plaintiff did not allege that there were any 'great necessities' for which the water should be furnished free, and in the absence of such allegation, the judgment of the court only determined that the city and county was not entitled, as it claimed, to free water for all purposes. The decision and judgment did, however, determine that the defendant was bound to furnish water to the city and county free of charge 'in case of fire or other great necessity.' The meaning of these words is still an open question." 14 Pac. Law Rep. 219, and 52 Cal. 118. Thus the court construes its own prior decisions, and declares that it did not intend to give an authoritative construction on the disputed point.

The court then proceeds to construe the phrase, "other great necessity," in connection with the other provisions of the act, and distinctly holds that, to the extent of its means, "it is the duty of the Spring Valley Water Works to furnish water free to the city and county in case of fire, and also in case it is demanded for irrigating the parks and squares, watering streets, flushing the sewers, and in case of any other demand based on a requirement which is incidental to the discharge by the supervisors of their duty as local legislators, except when it is to be used by human beings for family purposes;" but that said company "may charge the ordinary rates (when they shall have been fixed in the manner required by the general law) for water supplied for drinking and culinary purposes; for purposes of lavation, and for domestic uses to the inhabitants or occupants of various institutions, penal or charitable, established by or under the control of the city and county government, to the public schools, and to the public offices." 14 Pac. Law Rep. 220, and 52 Cal. 122. But it is now insisted that this construction is obiter dictum, and therefore of no controlling force, because the court having determined that there was no proper case for the issue of a writ of prohibition, it was not authorized to go further and determine the merits. I know of nothing to prohibit the court from determining every point that is properly presented by the record where it has jurisdiction of the case. The question as to the propriety of issuing the writ was not jurisdictional. The court had authority to issue the writ in a proper case, as it has to issue an injunction, or to cancel a deed in a proper case; and the question was, not whether the court had jurisdiction to issue a writ of prohibition, but whether the petition presented a proper case for its exercise. There were two grounds relied on to show that there was not a proper case for exercising the jurisdiction: (1) That the board of supervisors is a legislative body hav-

ing a discretion to pass ordinances, and that the court ought not to interfere with its legislative discretion in advance on the hypothesis that it intends to pass an illegal ordinance, especially when it can not be known in advance what its intention as a legislative body is; (2) that the city had a right to the water claimed, and a right to take the measures alleged to secure it in case the petitioner should shut it off; and for that reason, also, there was not a proper case for the prohibitory writ. Both grounds were distinctly and squarely presented by the record, and relied on, and the latter more especially fully argued by counsel. The court might just as well have rested its decision on the second ground, if found good, without noticing the first, as upon the first without noticing the second. Or it might, if thought proper, have decided both, as it did. It is a matter of almost every day occurrence that the record presents two or more points, either of which, if sustained, would determine the case, and the court decides them all. In such case it can no more be said that one rather than the other is obiter. In this case the court was earnestly pressed by counsel on both sides to decide the case on the merits, and give an authoritative construction of the statute. The great anxiety was to ascertain the rights of the respective parties, and the mode was of no consequence. In fact, the great burden of the arguments of counsel was on the construction of the statute, and the court elaborately considered this one point, two justices discussing it fully in separate opinions, and saying very little on the other, one of them not referring to it at all. It was the very point upon which the earnest struggle hinged. It was the point most distinctly and thoroughly considered by the court; and it was distinctly and expressly determined. After the decision three elaborate printed arguments were filed in support of a petition for rehearing upon the second point by some of the ablest counsel in the state— one of seventy-one, one of thirty-two, and one of twenty-four closely-printed pages— one of the arguments being by counsel representing the individual stockholders, who appeared as amicus curiae. All of these discussions were upon the merits, the rights of the parties under the statute, the first point only being mentioned by the counsel in one of the arguments at the close, where, after finding the decision to be against their claim, they asked the court that a rehearing be granted in order that all the decision, saving that relating to the remedy might be withdrawn, leaving open the other questions on the construction for future discussion. Counsel in that case certainly did not regard the construction of the statute as obiter. The court denied the rehearing, and the decision stands as the solemn judgment of the court. The other point received and required very little attention from the court or counsel. To say now that the construction of the statute

was merely obiter, is to say that a vast amount of labor, research, energy, and anxiety was expended by counsel and court to no useful purpose.

Speaking of dicta, in Cohens v. Virginia, 6 Wheat. [19 U. S.] 399, Chief Justice Marshall says: "It is a maxim not to be disregarded, that general expressions in every opinion are to be taken in connection with the case in which those expressions are used. If they go beyond the case they may be respected, but ought not to control the judgment in a subsequent suit where the very point is presented for decision. The reason of this maxim is obvious. The question actually before the court is investigated with care, and considered in its full extent. Other principles which may serve to illustrate it are considered in their relation to the case decided, but their possible bearing on all cases is seldom completely investigated." In the present instance the court did not go beyond the record, for the construction of the statute was distinctly presented by the record as one point for decision. "The question" was "actually before the court," "investigated with care, and considered in its full extent." It was the very point upon which nearly all the efforts and research of counsel and court were actually expended. The discussion did not, in any sense, serve to illustrate the other point. Indeed, it had no relation whatever to it. It was a distinct, separate, and independent point, and the only one in the case that counsel or parties practically cared anything about.

The form of the proceeding was merely the means to reach the end sought—of determining the rights of the parties under the act. The case comes fully up to the requirements indicated by Chief Justice Marshall to constitute an authoritative decision.

In answer to an objection that a point determined by the supreme court, relied on by the opposing party, was a mere dictum, I had occasion to say in Starr v. Stark [Case No. 13,317], "Both points are fairly and directly presented by the record, and the decision might as well have been put upon one as the other, and both are distinctly determined. We can, therefore, no more say that one was not directly adjudicated than the other."

I regard the construction put upon the clause in controversy by the supreme court, in the prohibition case cited, as authoritative, and being so, I rest my decision upon that case, without examining the question as an original proposition. It follows that the demurrer must be sustained, and the bill dismissed, and it is so ordered.

[NOTE. From this decree the complainant appealed to the supreme court, where, in an opinion by Mr. Justice Miller, the decree of the circuit court was affirmed, upon the ground that the appellant had shown no standing in a court of equity in himself to prosecute the suit. 104 U. S. 450. Conceding appellants' construction of the company's charter to be correct, there is nothing which forbids the corporation from dealing with the city in the manner it has done." It was held that the directors were capable of acting more understandingly upon the matter than a single stockholder, who did not even show to the court that any efforts had been made upon his part within the corporation itself. The injury, if any existed, was to the interests of the corporation, and that body alone had a right to sue.]