[No. 8,340.—In Bank.]
June 30, 1882.

# THE SPRING VALLEY WATER WORKS v. THE BOARD OF SUPERVISORS, OF THE CITY AND COUNTY OF SAN FRANCISCO.

WATER COMPANIES—FREE WATER—CONSTITUTIONAL LAW.—The provision of the Act of April 22, 1858 " for the incorporation of Water Companies," requiring them to furnish water free of charge to cities and counties, cities or towns, for certain purposes, was abrogated by the new Constitution (Art. xi., § 19 and Art. xiv., § 1); and such companies are now relieved from any such obligation.

ID.—ID.—ID.—DUTY OF BOARD OF SUPERVISORS TO ESTABLISH WATER RATES—MANDAMUS.—By § 1, Art. xiv. of the Constitution, the duty of fixing the rates for the use of water supplied to any city and county, or city or town or the inhabitants thereof is imposed upon the Board of Supervisors or other governing body of such city and county, city or town, and the provision is both mandatory and self-executing ; but, if legislation upon the subject were necessary, it is found in the Act of March 7, 1881. Accordingly, writ of mandamus granted commanding the defendant to proceed to fix the rates, or compensation to be collected for the use of all water supplied by the plaintiff to the City and County of San Francisco as well as the inhabitants thereof. (McKINSTRY, THORNTON, and McKEE, JJ., dissenting.)

APPLICATION for writ of mandamus.

*Fox & Kellogg,* and *F. G. Newlands,* for Plaintiff.

Whatever may have been the rights of the city, or the obligations of the Spring Valley Water Works, prior to the adoption of the present Constitution, neither the said last named corporation, nor any other person, is now under obligation to furnish water free of charge for any purpose whatever. (Const. Art. xi. § 19, Art. xiv. § 1.)

It will be observed that the new Constitution establishes a comprehensive system for the introduction of water into cities and towns, and the regulation of the rates or compensation for which it shall be sold. On the one hand the privilege is given to any person, natural or artificial, to lay down pipes in the streets of any city in the State, and supply such city and its inhabitants with water, and on the other hand the right is given to the governing body of the municipality to determine the rates or compensation for the water so supplied.

The Constitution certainly contains no provision requiring that water should be furnished free. On the contrary, it compels the Board to fix rates or compensation for water supplied to the city and county, as well as to the inhabitants.

It lays down a broad and uniform rule of action which applies to all persons, both individuals and corporations, giving them equal rights, subjecting them to equal conditions and burdens and to the same mode of regulation. The rights and obligations prescribed by the Act of 1858 (Stat. 1858, p. 218) were reciprocal. Under it provision was made to the effect that companies organized under the Act should furnish water to the municipality "in case of fire or other great necessity" free of charge; and on the other hand, and, as we claim, in consideration of that obligation, it was provided that the company should have the right to have a voice in fixing the rates to be charged for family uses, the price to be charged for water supplied for other uses to private consumers being left entirely with the company, or to be the subject of mutual agreement as in case of sales of other commodities.

Under the Constitution as it stood at the time of the passage of the Act of 1858, the private property of this company could not be taken for public use without just compensation, so that the only theory upon which the provision for free water for any purpose could be maintained would and must be that of contract and of consideration, or of compensation provided for in the Act and accepted by the company. Upon that theory it has always been held that this obligation to the city was compensated by the privileges conferred by the Act upon the company, the chief of which, and the only one of value, was that of having a voice in fixing the rates.

This Court has recently held, in the case of *S. V. W. W.* v. *Schottler*, 9 P. C. L. J. 630, that under the present Constitution this right has been taken from the Company, and it no longer has any right to a voice in the fixing of rates. If the Constitution has taken from us the consideration for free water it must *ex necessitate* have relieved us of the obligation to furnish water free.

But to render the matter still more certain, it is provided in the Act of 1858 as follows:

" Section 3. All privileges, immunities and franchises that

may hereafter be granted to any individual or individuals, or to any corporation or corporations relating to the introduction of fresh water into the City and County of San Francisco, or into any city or town in this State, for the use of the inhabitants thereof, are hereby granted to all companies incorporated, or that may hereafter become incorporated for the purpose aforesaid."

Here, then, we have a direct grant made by the Constitution itself, to any individual or company, of all the privileges that are conferred upon this petitioner, freed from the obligation to furnish water free for any purposes, and subject only to the condition that the municipal government shall fix the rates; and by the express provision of the Act under which this company is incorporated, and above quoted, the privileges thus conferred enure to the benefit of petitioner.

And it is apparent that the framers of the Constitution so understood it, and deliberately intended by that instrument to do away with free water, and to relieve the private consumers from the burden of maintaining water works for public use and public protection; for by Section 1, Article xiv., it is further expressly provided that the Board of Supervisors shall fix the rates or compensation to be charged, etc., for "the use of water supplied to any city and county, city or town, or the inhabitants thereof," etc. This point the Supreme Court has already passed upon, in considering the effect of provisions of law similar to Section 3 of the Act of 1858. (*San Francisco* v. *The Spring Valley Water. Works,* 48 Cal. 526; 38 id. 478.)

*J. F. Cowdery* (City and County Attorney), for Defendants.

As a question of fact, no other company has been formed or exists, pretending to supply San Francisco with water except Spring Valley Water Works above. The provisions of Section 3 of the Act of April 22, 1858, are nugatory, having nothing to act upon. The right of the City of San Francisco to have free water from the Spring Valley Water Works was obtained originally as the consideration of a valuable grant of land and water made to the San Francisco City Works. The right has been confirmed by this Court after years of closely contested litigation, and is and always has been prized

as of great value by the public. Had the makers of the Constitution intended to dispense with free water, and to give away such a property, they would not have left it to a sophistical construction of a doubtful clause, half concealed in an article upon some other subject, but would have put it in plain language, free from doubt, saying in terms, just what was meant. If the Convention intended to abolish free water, it certainly failed to express its purpose in specific and unmistakable language.

Unless the Constitution of 1879 changes the law, the Spring Valley Water Works is bound to furnish water to the City and County of San Francisco, to the extent of its means in case of fire or other great necessity, free of charge. Petitioner claims that Article xiv. of the Constitution, read in connection with Section 19, of Article xi., has abolished free water. That clause which provides that the Board of Supervisors, or city or town Council, or other governing body of such city and county, or city and town, shall fix annually the rates or compensation to be collected for water supplied to any city and county, or city or town, or the inhabitants thereof, does not make it obligatory upon a city or town to pay for all water consumed; but it does render it obligatory upon such boards or councils to fix the rates which a city or town shall pay for water which she is not entitled to use free of charge.

Petitioner places its main reliance upon the last clause of Sec. 19 of Art. xi. It asserts that the last clause commencing with the words " upon the condition that the municipal government shall have the right to regulate the charges thereof," has abrogated all other statutes in so far as they conflict with this clause. It claims that the sole condition upon which its right to use the streets depends is the condition that the city shall have the right to regulate its charges for water. It also claims that under the provisions of Sec. 19, aforesaid, that other corporations, associations and individuals may use the streets of a city to introduce water subject to the conditions provided for in Section 19; that petitioner has the same rights under and by virtue of the third section of the Act of April 22, 1858. The right to lay down pipes in the streets of a city to supply the inhabitants with water may exist without the right to collect tolls or compensation for its use. The

Constitution gave the right to lay down pipes, but the right to charge rates for the use of water being a franchise, was reserved to the legislature under Article xiv.

Morrison, C. J.:

This is an application for a peremptory writ of mandamus to compel the defendants, as the Board of Supervisors of the City and County of San Francisco, to proceed forthwith to fix the rates or compensation to be collected for the use of all water supplied by the petitioner to the City and County of San Francisco, as well as to the inhabitants thereof, and also praying that it may be adjudged that the petitioner is not under obligation to furnish water to said city and county, for any municipal purpose whatever, free of charge. The petition contains the proper, general and introductory allegations showing that the plaintiff was, on the nineteenth day of June, 1858, duly incorporated under the laws of this State, for the purpose of introducing pure and fresh water into the City of San Francisco; that it has erected the necessary works, and expended a large sum of money to that end; and that it has already introduced water into the city, and has commenced to supply it, and the inhabitants thereof, with pure, fresh water; that the petitioner alone supplies all the water taken for the extinguishment of fires, irrigation of public squares and parks, sprinkling of streets, flushing of sewers, and for all other municipal purposes; that there are no public works owned or controlled by said city and county for supplying the same with water. It further states that no rates have been fixed by the Board of Supervisors of said city and county, although application has been made to the Board of Supervisors to fix such rates or compensation, and that the said Board has refused and still refuses to fix any rates or compensation to be charged, collected or paid, for water supplied to said city and county, for any municipal purpose whatever, except for the single purpose denominated "family uses."

The answer of the defendants admits that the petitioner, the Spring Valley Water Works, was, on the nineteenth day of June, 1858, and now is, a corporation organized and existing under the laws of the State of California, and avers that when the company became incorporated, it assumed an obli-

gation to furnish water, to the extent of its means, to the City and County of San Francisco, for the extinguishment of fires, the flushing of sewers, and the watering of parks, free of charge, which is still in full force, and therefore defendants allege that it is not their duty to fix rates or compensation to be charged, collected or paid for water supplied to said city and county, for any municipal purpose, except for the single purpose denominated, family uses; and they pray to be hence dismissed.

The issues made in the case, and the questions upon which the Court is called upon to pass, clearly appear from the pleadings, and I will proceed to examine them with that care and deliberation which their great importance demands.

The petitioner was incorporated under "An Act for the Incorporation of Water Companies," approved April 22, 1858, the fourth section of which provides that "all corporations formed under the provisions of this Act, or claiming any of the privileges of the same, shall furnish pure, fresh water to the inhabitants of such city and county, or city, or town, for family uses, so long as the supply permits, at reasonable rates, and without distinction of persons upon proper demand therefor, *and shall furnish water to the extent of their means to such city and county, or city, or town, in case of fire, or other great necessity, free of charge.*" Under that portion of the section which I have italicized, it has been held by this Court that "it is the duty of the Spring Valley Water Works to furnish water free to the city and county in case of fire, and also in case it is demanded for irrigating the parks and squares, watering the streets and flushing the sewers." (*S. V. W. W.* v. *San Francisco*, 52 Cal. 111; *San Diego Water Co.* v. *San Diego*, 59 id. 517.) It therefore follows, as a consequence, that if Section 4 of the Act of 1858 is still in existence, this Court has no right, by mandamus, to compel the Board of Supervisors to fix the rates or compensation for water to be furnished the city, which the company is obliged to furnish without charge, and therefore that portion of petitioner's prayer should be denied.

But it is claimed, on behalf of the petitioner, that the Act of 1858, so far as the same relates to free water, *so called*, has been abrogated and annulled by the provisions of the Con-

stitution that went into effect on the first day of January, 1880. One of the provisions of the Constitution, which, it is claimed, abrogate the Act of 1858, is Section 19 of Article xi., which reads as follows:

"In any city where there are no public works owned and controlled by the municipality, for supplying the same with water or artificial light, any individual or any company duly incorporated for such purpose, under and by authority of the laws of this State, shall, under the direction of the Superintendent of Streets, or other officer in control thereof, and under such regulations as the municipality may prescribe for damages, have the privilege of using the public streets and the thoroughfares thereof, and of laying down pipes and conduits therein, and connections therewith, so far as may be necessary for introducing into and supplying such city and its inhabitants either with gaslight or other illuminating light, or with fresh water for domestic and all other purposes, upon the condition that the municipal government shall have the right to regulate the charges thereof."

It will be observed that Section 19 of Article xi., declares that any individual or company, duly incorporated under the laws of this State, shall, under certain conditions prescribed, have the privilege of using the public streets and thoroughfares for laying down pipes and conduits therein for introducing and supplying such city and its inhabitants with fresh water for domestic and all other purposes, "upon the condition that the municipal government shall have the right to regulate the charges thereof."

By the third section of the Act of 1858 it is provided that "all privileges, immunities and franchises that may hereafter be granted to any individual or individuals, or to any corporation or corporations, relating to the introduction of fresh water into the City and County of San Francisco, or into any city or town in this State, for the use of the inhabitants thereof, are hereby granted to all companies incorporated, or that may hereafter become incorporated, for the purposes aforesaid."

It is claimed on behalf of the petitioner that by virtue of the above section the Spring Valley Water Works was put upon an equality with any individual or corporation to whom

the right of introducing fresh water into the city should afterwards be granted, and that as such right has been granted by a provision of the Constitution to any individual or corporation to introduce water into the city for sale, without any limitation or condition except the sole condition of having the rates fixed by the Board of Supervisors, therefore the obligation imposed upon the Spring Valley Water Works to furnish free water has been removed.

I think the position is well taken, for if any other individual or corporation has the right to introduce water into the city for its use and to demand pay therefor, the Spring Valley Company stands on the same footing and is entitled to the same " privileges, immunities and franchises." To impose upon the petitioner the obligation of furnishing water to the city for certain purposes free, would be withholding from it privileges and immunities, and would be imposing upon it burdens not cast upon any other individual or corporation provided for by Section 19 of Article xi. of the Constitution. It may be that no other individual or corporation has laid pipes or introduced water into the city for its use or for the use of the inhabitants thereof, but the right to do so is clearly granted by the Constitution, subject to certain conditions therein prescribed, none of which provide for or contemplate free water; and this is a privilege, and immunity, within the meaning of Section 3 of the Act of 1858, which *ipso facto* relieves the petitioner from the obligation of furnishing water free, under Section 4 of the same Act.

2. But there is another ground relied upon by petitioner, which seems even stronger than the one above presented. By Section 1 of Article xiv., of the Constitution it is provided that "the use of all water now appropriated, or that may hereafter be appropriated, for sale, rental or distribution, is hereby declared to be a public use, and subject to the regulation and control of the State, in the manner to be prescribed by law; provided, that the rates or compensation to be collected by any person, company, or corporation in this State, for the use of water supplied to any city and county, or city or town, or the inhabitants thereof, shall be fixed annually, by the Board of Supervisors, or city and county, or city or town council, or other governing body of such city and county,

or city or town, by ordinance or otherwise, in the manner that other ordinances or legislative acts or resolutions are passed by such body, and shall continue in force for one year and no longer. Such ordinances or resolutions shall be passed in the month of February of each year, and take effect on the first day of July thereafter. Any Board or body failing to pass the necessary ordinances or resolutions fixing water rates, where necessary, within such time, shall be subject to peremptory process to compel action at the suit of any party interested, and shall be liable to such further processes and penalties as the Legislature may prescribe. Any person, company or corporation collecting water rates in any city and county, or city or town in this State, otherwise than as so established, shall forfeit the franchises and water works of such person, company or corporation to the city and county, or city or town where the same are collected, for the public use."

The provision contained in the above Article, to the effect that "the rates or compensation to be collected by any person, company, or corporation in this State, for the use of water supplied to any city and county, or city or town, or the inhabitants thereof, shall be fixed," etc., is as broad and comprehensive as the English language could make it, and gives to the Board of Supervisors of the city plenary power over the subject-matter to which the Article relates. Water supplied to the city and county is as fully covered by the express language of the Article as is water supplied to the individual consumers, and the whole matter of rates or compensation is placed within the power and control of the Board of Supervisors.

Section 4 of the Act of 1858, which imposes upon water companies the duty of furnishing water to cities and towns in case of fire or other great necessity free of charge, also provides that the rates to be charged for water shall be determined by a Board of Commissioners, two of whom to be elected by the city and county, or city or town authorities, and two by the water company, and in case the four can not agree, the four Commissioners shall select a fifth.

The effect of the present Constitution upon the clause of Section 4 of the Act of 1858, last referred to, was under con-

sideration by this Court in the late case of the *Spring Valley Water Works* v. *The Board of Supervisors of San Francisco, ante,* 3, and it was there held that the portion of Section 4 which gave to the Company a voice in fixing the rates or compensation for water furnished the city of San Francisco or the inhabitants thereof, was taken away by Article xiv. of the Constitution.  In that case Mr. Justice McKee, delivering the majority opinion of the Court, says: "A privilege of participating in the selection of agents for the performance of a public duty between it and the public has been taken away; but that privilege was in no sense a part of the contract between it and the State.  The State was not under any obligation to continue it or to make it co-existent with the grant of the charter.  As a mere privilege, the Company held it subject to the retained power of the State, in the exercise of which it was liable at any time to be modified or annulled. By the constitutional amendment the State has annulled it; but in doing so, it has not interfered with the charter of the Company or disturbed any right of property acquired under it, or obstructed the Company in the enjoyment of any of these rights."

It seems to me that the decision in the above case has a bearing upon the case now under consideration, for if the Constitution took from the Water Company the privilege of having a voice in fixing the rates it might charge for water supplied, it also relieved the company of the duty of supplying water to the city for any purpose free of charge.  The consideration for the duty imposed upon the company to supply free water was the privilege conferred by the same section of the Act upon the company to participate in fixing the water rates.  The duty and privilege were correlative, and when the privilege was taken away the corresponding duty ceased to exist.

But I am not obliged to rely upon this line of argument to support the conclusion arrived at in the case now before us. The plain language and obvious intention of the Constitution force me to the same conclusion.  It was the manifest purpose of that instrument to frame a scheme covering the entire subject of water supply: "The use of water now appropriated or that may hereafter be appropriated for sale, rental, or dis-

tribution, is hereby declared to be a public use, and subject to the regulation and control of the State, in the manner to be prescribed by law; *provided*, that the rates of compensation * * * for the use of water supplied to any city and county * * * shall be fixed, annually, by the Board of Supervisors." The time for the performance of this duty is the month of February in each year. The duty imposed by the Constitution, as well as the time for its performance, are plainly marked out in the Constitution—its provisions being both mandatory and self-executing. But if legislation on the subject were necessary, I find it in the Act of March 7, 1881, the first section of which provides as follows:

" The Board of Supervisors, Town Council, Board of Aldermen, or other legislative body of any city and county, city or town, are hereby authorized and empowered, and it is made their official duty, to annually fix the rates that shall be charged and collected by any person, company, association, or corporation, for water furnished to any such city and county, or city or town, or the inhabitants thereof."

This Act follows the language of the Constitution. It contains numerous details, applicable to the subject, and the eighth section thereof imposes a penalty on the Board of Supervisors or other legislative body for a failure to perform any of the duties prescribed by it.

I have endeavored to show that Section 4 of the Act of 1858, which made it the duty of the petitioner to furnish water to the City of San Francisco for certain purposes, without any compensation therefor, has been abrogated by the Constitution. It was a duty imposed upon the company by the law, and it was within the power of the Legislature, and, *a fortiori*, of the framers of the Constitution, at any time, to relieve the Water Company from the obligation.

But if permitted to inquire into the motives of the Constitutional Convention in discharging the Water Company from an obligation imposed upon it by the law of its creation it will not be difficult to discover a sufficient motive. The company must be compensated for the water supplied by it. This compensation may be fair and just, or it may be unjust and exorbitant. Whether it is the one or the other, an unfair and disproportionate burden fell upon the individual con-

sumers under the operation of the Act of 1858. The water furnished the city for the extinguishment of fires, and other great necessity, was not paid for by the city out of funds arising from taxes upon city property, but it was indirectly paid for by the individual consumers of the water. The owner of a large and very valuable building, used as a store or warehouse, in which but little if any water is used, enjoys benefits resulting from the use of the water in extinguishing fires, and the protection of his property, as well as the reduction of the rate of insurance thereon, but he contributes little or nothing to the Water Company for the benefits thus conferred. The householder occupying a small residence of comparatively but little value, is required to pay for all the water used by him.

It is too plain to require argument, that if the Water Company is to receive compensation for all the water furnished by it (and that it is, will hardly be denied), the burden under the Act of 1858, fell almost exclusively upon the consumers, and the owners of valuable property, enjoying the protection and other benefits from the water, paid little or nothing. It was to distribute the burden more equally that the new Constitution abolished free water. And there is no hardship in the new rule of rates or compensation introduced by the Constitution. The matter has been placed in the hands and under the power and control of the Board of Supervisors of the city and county. This body represents the people of the city, one member being selected from each of twelve districts thereof. It is their duty to protect the rights of the city and the individual rights of the citizens. It also owes certain duties to the individual or corporation furnishing water for the use of the city and the inhabitants thereof. If, in fixing the rates or compensation it is governed by fair and disinterested motives, and does establish such rates as will be fair and just to the Water Company, as well as to the people, distributing the burden as equally and justly as possible among the consumers, as well as the property-owners, who enjoy the benefits and protection which the presence of the water in the city affords, no one will have any cause to complain of the scheme adopted by the new Constitution.

Writ granted as prayed for.

ROSS, J., concurring:

I concur in the judgment for the reasons stated in my dissenting opinion in the case of the *Spring Valley Water Works* v. *The Board of Supervisors of San Francisco, ante,* 3, and in my concurring opinion in the case of *San Francisco Pioneer Woolen Factory* v. *Brickwedel,* 60 Cal. 166.

MYRICK, J., concurring:

I concur in the judgment upon the third ground stated in the foregoing opinion written by the Chief Justice, and for the reasons given by me in concurring in the judgment in the case of *San Francisco Pioneer Woolen Factory* v. *Brickwedel,* 60 Cal. 166.

SHARPSTEIN, J., concurring:

The provisions of our State Constitution, which imposes upon the Board of Supervisors the duty of fixing the rates to be paid for water supplied to the City and County of San Francisco, as well as to the inhabitants thereof, must be obeyed, unless it contravenes that clause of the Constitution of the United States, which prohibits a State from passing any law impairing the obligation of contracts. The petitioner was incorporated under a general law providing for the incorporation of water companies, approved April 22, 1858. (*San Francisco* v. *S. V. W. W.,* 48 Cal. 493; *S. V. W. W.* v. *San Francisco,* 52 id. 111.)

The law under which it incorporated is its charter, and to that extent it is protected as by a contract. (*Chicago etc., R. R. Co.* v. *Iowa,* 94 U. S. 155.) But it is a contract between the State and the petitioner exclusively. The City and County of San Francisco is in no sense a party to it. And the State, by the adoption of the present State Constitution, has declared "that the rates or compensation to be collected by any person, company or corporation in this State for the use of water supplied to any *city and county,* or city or town, or the inhabitants thereof, shall be fixed, annually, by the *Board of Supervisors,* or City or Town Council, or other governing body of such city and county, or city or town, by ordinance or otherwise, in the manner that other ordinances or legisla-

tive acts or resolutions are passed by such body, and shall continue in force one year and no longer."

That indicates with sufficient clearness, to my mind, an intention on the part of the State to alter the law which provided that the rates to be collected for water supplied for other purposes than extinguishing fires, flushing sewers, sprinkling streets and watering parks, should be fixed by a Board of Commissioners composed of four persons—two of whom should be selected by the city and county and two by the petitioner. And that in case of fire or other great necessity, it should be furnished free of charge. And the petitioner acquiesces in the change, (1) by requesting the respondents to comply with the constitutional provision; (2) by asking this Court to enforce a compliance with it.

But I attach little or no importance to such acquiescence. In my opinion the State had the right to alter or repeal the law under which the petitioner became incorporated without its acquiescence. I think so because the right to do so was expressly reserved by the Constitution. And I concurred in the opinion of Mr. Justice McKee in *S. V. W. W.* v. *Supervisors* (7 Pac. C. L. J., 614), in which he said : "But the company obtained its charter under a section of the Constitution of 1849, which authorized the formation of corporations under general laws, and reserved to the State the power of altering such laws from time to time or repealing them. As a part of the organic law of the State, this provision entered into the contract between the company and the State, and when the corporation accepted the charter of the company, under the general law of 1858, they consented to take it subject to the exercise of the reserved powers of the State."

In speaking of a similar clause in the Constitution of Wisconsin, the Supreme Court of the United States said : " In Wisconsin, all corporations are liable to have their charters altered or repealed at the will of the Legislature." (*Peik* v. *Chicago etc. Railway Co.*, 94 U. S. 164.)

I have said that while the charter granted by the State to the petitioner constituted a contract, the City and County of San Francisco was in no sense a party to it. But whether it was or not, could make no difference, because the Legislature could not by inserting the clause which provides that water

shall be furnished to said city and county for certain purposes free, deprive the State of the power to alter or repeal the law under which the petitioner became incorporated. The Constitution could not be evaded in that way. That part of the law was subject to alteration or repeal the same as any other part. It was not excepted or protected by the Constitution any more than any other provision of the law. It was subject to such alteration or repeal because the Constitution in force when the law was enacted declared that it should be subject to alteration or repeal. In *Chicago etc. R. R. Co.* v. *Iowa*, *supra*, " the company had pledged its income as security for the payment of the debts incurred, and had leased its road to a tenant that relied upon the earnings for the means of paying the agreed rent," and it was claimed that that constituted a contract which would be impaired by the alteration which the Legislature had made in the law under which the company incorporated. To that the Court replied : " The company could not grant or pledge more than it had to give. After the pledge and after the lease the property remained within the jurisdiction of the State, and continued subject to the same governmental powers that existed before."

And it seems to me to be equally clear that in this case neither the Legislature nor the petitioner could make any contract which could interfere with the right which the State had reserved to itself of altering or repealing the law under which the petitioner became incorporated.

It is urged, however, that, if it be conceded that the people of the State, either by legislative enactment, or by the adoption of a Constitution containing a provision inconsistent with that clause of the Act for the incorporation of water companies which requires them to furnish water free of charge for the extinguishment of fires, etc., might alter or repeal that clause, that it has not been altered or repealed, because it is not inconsistent with the Constitution, and must therefore " remain in full force and effect until altered or repealed by the Legislature." (Const. Art. xxii., Sec. 1.) In other words it is claimed that the evident intention of the framers of the Constitution was to substitute the Board of Supervisors for the Board of Commissioners, provided for by the law as it stood before the adoption of the Constitution, and to confer

upon the Board of Supervisors the same powers that had been previously conferred upon the Board of Commissioners, and none other, in respect of the fixing of rates to be paid for water supplied to private consumers and to the city and county of San Francisco.

If there is nothing in the Constitution which is inconsistent with the law in force at the time of the adoption of the Constitution, such law has not been affected by the adoption of the Constitution. So that the only question to be determined is whether the law in relation to the furnishing of water free of charge for certain specified purposes, is inconsistent with the clause of the Constitution which provides that the Board of Supervisors shall fix the rates to be collected for the use of water supplied to said city and county. If the law in relation to furnishing water for certain purposes free of charge be not inconsistent with any provision of the Constitution, it follows that if there were no such law the Legislature might now enact one, because any law which is not inconsistent with any provision of the Constitution is equally valid whether enacted before or after the adoption of that instrument.

And is it not quite clear that the Legislature could not now pass a law affecting the rates to be collected for water to be supplied to the city and county of San Francisco which would be valid ? Has not the Constitution withdrawn that subject wholly from the jurisdiction of the Legislature ? It seems to me that it has. And I do not think that under the authority to fix the rates to be paid for water supplied to said city city and county the Board of Supervisors would have the power to say that water should be furnished free of charge for any purpose. If for any purpose, why not for all purposes ? Water must be supplied at the rates fixed by the Board of Supervisors. But there is no provision in the Constitution which requires that it shall otherwise be supplied ; and if there had never been a law which provided that it should be supplied for certain purposes free of charge, I do not think that any one would now claim that there was any power in the Board of Supervisors, or in the Legislature, to compel the petitioner to furnish any water to the city and county for any purpose free of charge. And if not, it does seem to me

that the law which requires that it shall be supplied for some purposes free of charge is inconsistent with the Constitution, and therefore abrogated by it.

The requirement that rates to be collected for water supplied to the city and county of San Francisco, shall be fixed by the Board of Supervisors is, in my judgment, wholly inconsistent with the theory that such rates are to be fixed for only a part of the water supplied to said city and county. As well might it be contended that rates were to be fixed for only a part of that supplied to private consumers.    The plain import of the language of the Constitution is that rates to be collected for all water supplied to said city and county and to the inhabitants thereof shall be fixed by the Board of Supervisors; and any law which provides that rates shall be fixed for only a part of the water supplied to said city and county is, in my opinion, inconsistent with the Constitution.

I am unable to perceive that the City and County could in any event be at all embarrassed in the case of fire, as it would then have the right, under the police power, to use all the water necessary to extinguish it, whether rates had or had not been fixed.

I concur in the judgment that the writ issue as prayed.

McKinstry, J., dissenting:

I respectfully dissent:

1. Article xiv. of the Constitution reads as follows:

"Section 1. The use of all water now appropriated, or that may hereafter be appropriated, for sale, rental or distribution, is hereby declared to be a public use, and subject to the regulation and control of the State, in the manner to be prescribed by law; provided, that the rates or compensation *to be collected* by any person, company, or corporation in this State for the use of water supplied to any city and county, or city or town, or the inhabitants thereof, shall be fixed, annually, by the Board of Supervisors, or city and county, or city or town council, or other governing body of such city and county, or city or town, by ordinance or otherwise, in the manner that other ordinances or legislative acts or resolutions are passed by such body, and shall continue in force for one year and no longer.    Such ordinances or resolutions shall be passed in the

month of February of each year, and take effect on the first day of July thereafter. Any board or body failing to pass the necessary ordinances or resolutions fixing water rates where necessary, within such time, shall be subject to peremptory process to compel action at the suit of any party interested, and shall be liable to such further processes and penalties as the Legislature may prescribe. Any person, company, or corporation, collecting water rates in any city and county, or city or town in this State, otherwise than as so established, shall forfeit the franchises and water works of such person, company or corporation to the city and county, or city or town, where the same are collected, for the public use.

"Section 2. The right to collect rates or compensation for the use of water supplied to any county, city and county, or town, or the inhabitants thereof is a franchise, and can not be exercised except by authority of and in the manner prescribed by law."

By the first section the Legislature is commanded to prescribe the manner in which the public use shall be regulated and controlled. The power of regulation and control is placed in the Legislature, without limitation, except that the rates or compensation "to be collected" for water supplied must be fixed annually by the Board of Supervisors, etc. The section declares the right to collect rates to be a *franchise* which can not be exercised "except by authority of and in the manner prescribed by law." Both sections contemplate legislation regulating and controlling the public use, by authority whereof, and in accordance with which, the right to enjoy the franchise of collecting rates or compensation, for water supplied, can alone be enjoyed. The *proviso*, in the first section, does not purport to treat of the powers of persons or incorporated companies, on whom the Legislature may confer the right to collect rates, except to the extent that the rates shall be fixed by the local authority. The whole purpose of the *proviso* is secured by giving to it the effect of making the Supervisors, or other local governing board, the commission to fix rates *when rates are to be collected.* Neither of the sections prohibits, in terms or by necessary implication, the Legislature from providing—in laws prescribing the regulation of the

public use of water "for sale, rental, or *distribution*"—that water shall be furnished for certain public purposes free of charge.    Under the present Constitution no laws have been passed prescribing the manner in which the use of water, which has been or may be appropriated, shall be regulated or controlled, or by what means *individuals* or corporations may acquire the franchise of collecting rates or compensation. If the plaintiff possesses the right at all, it is by virtue of its organization under the Act of 1858, and such right is subject to all the provisions and conditions of that Act; with the sole exception that, as held by this Court in *Spring Valley W. W.* v. *Supervisors,* 7 Pac. C. L. J. 614, the rates, which, according to that Act, are "to be collected" must be fixed by the Supervisors.    Certainly, in my opinion, the 14th Article of the Constitution can be held to have no *greater* effect upon the Act of 1858 than to transfer to the Supervisors a power previously employed by the mixed commission, composed in part of the appointees of the corporation.    By that act the plaintiff is authorized to charge for water furnished directly to the city and county for certain purposes. . (*Spring Valley W. W.* v. *San Francisco,* 52 Cal. 122.)    As to such purposes there are "rates to be collected" which may be fixed by the Supervisors.

II. The last Section 19 of Article xi. of the Constitution provides: " In any city where there are no public works owned and controlled by the municipality for supplying the same with water or artificial light, any individual, or any company duly incorporated for such purpose under and by authority of the laws of this State, shall, under the direction of the Superintendent of Streets, or other officer in control thereof, and under such general regulations as the municipality may prescribe for damages and indemnity for damages, have the privilege of using the public streets and thoroughfares thereof, and of laying down pipes and conduits therein, and connections therewith, so far as may be necessary for introducing into and supplying such city or its inhabitants, either with gas light or other illuminating light, or with fresh water for domestic and all other purposes, upon the condition that the municipal government shall have the right to regulate the charges thereof."

The article treats of " cities, counties and towns." This caption includes " cities and counties " and the provisions as to *cities* in the 19th Section are applicable to " cities and counties." (Const. Art. xi., Sec. 7.) But Section 19 of Article xi. is to be read in connection with Sections 1 and 2 of Article xiv. All portions of the Constitution are to be given effect. By Section 19, therefore, the power is not conferred upon every individual, under the direction of the Street Superintendent and subject to municipal regulations, to tear up the streets of a city for the purpose of laying down pipes, but only upon such individuals and corporations as shall acquire the franchise of collecting rates or compensation for waters to be supplied " by authority of, and in the manner prescribed by *law;* " the law, with reference to the use of water, commanded by the first section of the 14th article. No law has yet been passed providing for the manner of acquiring the right by individuals. Hence, the companies organized under the Act of 1858 have not yet acquired additional privileges, immunities or franchises by reason of Section 3 of that Act, which provides that all privileges which " may hereafter be granted to any individual  *  *  *  *  are hereby granted to all companies incorporated," etc.

Article xiv. is headed "Water and Water Rights;" Article xi., as we have seen, "Cities, Counties and Towns." Section 19 of the article last mentioned does not confer the right to charge tolls for water supplied to cities or their inhabitants. It presupposes the existence of individuals and corporations who shall have acquired the right "by authority of and in the manner prescribed by law," and confers upon such individuals and corporations the privilege of laying down water pipes in the streets, under municipal direction and regulation. Treating of *cities*, the nineteenth section recognizes the right of those who shall be clothed with the franchise of charging rates for water to enter upon and use the streets, but provides that the city shall have power (of which the Legislature can not deprive them) of directing, by their appropriate officer, how the work shall be done so as to interfere as little as possible with the general use of the streets, and, by general regulations, to afford protection against damages. Still

further, the section reasserts the right of the city government to fix rates to be charged for water supplied.

The Constitution does not confer the franchise of collecting water rates upon any person or class of persons. It leaves the power of granting such privileges to the Legislature, to be exercised by the enactment of general laws. (Art. xiv., §§ 1, 2; Art. iv., § 25; Art. xii., § 1.)

In the opinion of members of this Court, Section 19 of Article xi., of the present Constitution, *prohibits* the passage of a general law, providing for the acquisition of the franchise of charging rates for water supplied to cities, or the inhabitants thereof, which shall require water to be furnished free of charge for the extinguishment of *fires.* The right to demand a supply, and the right to demand compensation therefor where "rates are to be collected," are correlative. As has often been held, a further supply may be refused to one indebted for water already furnished. Can the individual or corporation refuse to furnish water to subdue a conflagration because a back bill has not been paid by the city ? If this be so, while buildings and other private property may be *destroyed* to prevent the spread of a fire, water cannot be taken to put the fire out if any sum be due for past supplies.

At all events, water cannot be taken to suppress a conflagration unless the city *shall pay for it,* while the citizens whose buildings are destroyed to prevent the spreading of a conflagration, has no redress, unless expressly given it by statute. (*Dunbar* v. *San Francisco,* 1 Cal. 355 ; *Ruggles* v. *Nantucket,* 11 Cush. 433 ; *Stone* v. *Mayor, etc.,* 25 Wend. 157 ; *White* v. *Charleston,* 2 Hill, S. Car. 571.) I do not say that a statute or constitution cannot confer this extraordinary right on those to whom may be granted the franchise of charging rates for water distributed, but certainly doubtful or ambiguous language should not be construed as conferring it.

As I understand the view of the majority of members of this Court it is held, that, by a mandatory and self-executing provision of the Constitution, *every* individual, and every company incorporated to supply water to a city, is not only permitted to use the streets under municipal direction, but is also granted the franchise of charging rates or compensation "subject to the *sole* condition " that the rates shall be fixed

by the municipality; that the Legislature under the present Constitution has no power to attach any other condition to the enjoyment of the franchise by an individual corporation; and that all conditions found in a law providing for the organization of water corporations, passed prior to the adoption of the present Constitution, were annulled by the provisions of that instrument. If this view be correct, the Legislature has no power to require that the *individual*, who shall acquire the franchise, must be a citizen, or even a person *capable of becoming* a citizen; has no power to require that the organizers of a water corporation shall be citizens, or persons capable of becoming citizens; no power (except by reason of an express constitutional provision) to provide that stockholders in such corporations shall be personally liable for any portion of the corporate indebtedness; cannot, in brief, require of *individuals* (or corporators) any qualification, other than such as all individuals possess, or the assumption of any liabilities or duties other than those expressly mentioned in the Constitution. And this, although the condition at the end of Section 19, Article xi., is a condition upon *the use of the streets* and not a condition upon the grant of the franchise of charging rates; a grant not contained in the section.

But I am not driven to consider the consequences of the rule. What portion of Section 19 of Article xi. clearly and distinctly lays down this limitation of legislative power? That a limitation upon legislative power must clearly and distinctly appear in the Constitution of a State, has been so often asserted by the Courts, that it would occupy space unnecessarily to cite the many authorities here. Again; the plaintiff here claims the new right to be paid for all water furnished for the extinguishment of fires. As it is settled that a limitation upon State legislation should plainly appear in the Constitution, it is equally settled that when there is serious doubt in respect to the interpretation of a law (or Constitution) claimed to confer franchises upon individuals or corporations, it should be construed against the party claiming the privilege, and in favor of the public. This point is ruled in *S. V. W. W.* v. *San Francisco, supra*, and the proposition is sustained by all the English and well considered American

cases. Franchises or immunities are not conferred or extended by ambiguous language.

The legislative exposition of the new Constitution is opposed to the theory here asserted by the petitioner. The sixth section of the Act of March 7, 1881, (Stats. & Amdts., 1881, p. 55), reads as follows: "Rates for the furnishing of water shall be equal and uniform. There shall be no discriminations made between persons, or between persons and corporations, or as to the use of water for private or domestic and public or municipal purposes, *provided* that nothing herein shall be so construed as to allow any person, company, association, or corporation to charge any person, corporation, or association anything for water furnished them when, by any present law, *such water is free.*"

The present decision *annuls* the *proviso,* leaving the enacting clause to take effect in a sense the reverse of that intended by the Legislature.

I can not agree, that the fourth section of the Act of 1858, in so far as it requires water corporations to furnish water to a city "in case of fire or other great necessity" free of charge, is no longer of any force or effect, because in conflict with the last sentence of Section 19 of Article xi. of the Constitution. If that sentence prohibits the Legislature from requiring that water shall be furnished "in case of fire," etc. free of charge, the prohibition is found in the words "regulate" and "thereof." It may be claimed that the right in the city to *regulate* charges implies a right on the part of the individual or corporation to *make* charges, and, as the word "thereof" relates to supplies to the city "for domestic and all other purposes," the charges which it is the right (and therefore the duty) of the city to "regulate" *include* charges for water used in putting out fires. Thus by a series of implications, and by deducting inference from inference, the language of the Constitution is made the equivalent of a direct declaration, annulling the clause in the Act of 1858 which requires water to be furnished free of charge "in case of fire or other great necessity," and providing, that, from the time the Constitution should take effect, the Legislature should have no power to accompany the franchise with such requirement.

Is it thus that the framers of Constitutions declare a limitation upon legislative power?

Section 19 does not purport to impose new duties upon municipal governments. It treats of their *rights,* giving them authority to direct corporations or individuals, who shall acquire the franchise of distributing water, etc., shall use the streets, and to pass general regulations or ordinances, with reference to damages; and it reasserts their *right* to fix rates. The *duty* of the municipalities to fix rates is imposed by the first section of the 14th article. Reading the two together, the last words of Section 19 of Article xi. are in the nature of a proviso, that nothing in that section contained shall be construed as depriving the municipal government of the right of regulating or fixing the rates *"to be collected"* as provided in Section 1 of Article xiv. To hold, that by reason of the use of the word "thereof," the Constitution makers must have intended to prohibit the Legislature from allowing any water to be furnished free of charge, and to cast upon the municipal governments the duty of imposing charges upon *all* water supplied (which is *not* done in Section 1 of Article xiv.—the section which directly treats of the subject and defines the duty), is to build a constitutional inhibition upon inferences from language whose main, and, as I believe, only purpose, is to reassert the right of the local governments to fix the rates or compensation "to be collected."

III. It has been held that the provisions of the Constitution giving the right to, and imposing the duty upon the local government of fixing water rates, did not impair the obligation of any contract between the State and the present plaintiff; also that such provisions apply to corporations existing before the adoption of the Constitution: *S. V. W. W.* v. *Supervisors,* 7 Pac. C. L. J., 614.) If the question whether the provisions referred to were applicable to corporations organized before the present Constitution took effect were *res nova,* I should be inclined to the opinion that the provisions of the Constitution were not applicable to such corporations. The proviso in Section 1 of Article xiv. follows an enacting clause, which declares the use of water "for sale, rental, or distribution" a public use, to be regulated and controlled in a "manner *to be prescribed* by law." And the sections of Arti-

cle xii., which treats of "Corporations," would seem to recognize the proposition that all laws concerning corporations in force prior to the Constitution, would continue in force until altered by legislation; except, perhaps, in certain particulars expressly mentioned in that article. But, in what is said herein, I have assumed that the sections of Articles xi. and xiv. apply to corporations formed under the law of 1858.

Assuming the constitutional provisions to apply to corporations formed under the law of 1858, I am at a loss to understand how the mere transfer, to the Supervisors, of the power of fixing rates relieves such corporations of the duty of furnishing water, free of charge, for the extinguishment of fires.

It is said, with reference to the effect of the constitutional provision upon the fourth section of the Act of 1858: "The consideration for the duty imposed upon the company to supply free water was the privilege conferred by the same section of the Act upon the company to participate in fixing the water rates. The duty and privilege were correlative, and when the privilege was taken away the corresponding duty ceased to exist." But the section of the Act referred to does not purport to create any relation, between the duty and the privilege, which makes one dependent upon the other. Where, then, is the duty made the *consideration* for the privilege, or the former made *correspondent* to the latter? By the Constitution of 1849 it is provided that general laws under which corporations can be formed "may be altered from time to time, or repealed." (Art. iv. Sec. 31.) It might be argued that there is a limit to this power of alteration, under the former and present Constitution; that it can not be employed so as to impair the obligation of a contract. But, as we have seen, this Court has already decided that the provision of the Constitution of 1879, transferring the power and duty of fixing water rates to the Supervisors, *does not* impinge upon vested rights nor impair the obligation of any contract between the State and a water corporation formed under the Act of 1858. (*S. V. W. W.* v. *Supervisors, supra.*) How can a clause of the Constitution, of whose effects the corporations formed under the Act of 1858, have no legal right to complain, operate to relieve such corporations of any duty imposed by the law under which they were organized—the clause in the Constitution

itself containing no language indicating any such purpose. The people by the Constitution of 1879, did not modify a previous contract between them and the plaintiff. The sovereign power took from its creature not sacred *property*, but at most a privilege which it had reserved the right to retake by the thirty-first section of Article iv. of the former Constitution. Such is clearly the meaning of the decision in *S. V. W. W.* v. *Supervisors.*

The power, by the former Constitution, reserved to the State to alter general incorporation laws is of little value to the State or people if, in a case where admittedly the alteration *does not* impair the obligation of a contract, the power cannot be exercised without incidentally relieving corporations previously formed of some duties or obligations (not mentioned or referred to in the amendatory law), supposed to have some "corresponding" relation to the privilege of which—for the future—such corporations are deprived by the alteration in the law.

IV. I am perfectly willing to concede the public spirit which has induced the plaintiff to seek by this proceeding to relieve the individual consumers of water by imposing a portion of their burden upon the city. I shall be glad if any practical benefit shall accrue by the change to the consumers or to the public. After all, however, the question is, What is the law ?—not whether the law might be improved.

THORNTON, J., dissenting:

I concur in the conclusion reached by McKinstry, J.

The second section of Article xiv. of the Constitution declares in plain words that "the right to collect rates or compensation for the use of water supplied to any city, city and county, or town is a franchise, and can not be exercised except by authority of and in the manner prescribed by law."

It follows from these words that the right to collect rates or compensation for the use of water pertains to no person, company, corporation, or association, without authority of law. A law must exist vesting this right or it does not vest in any one. This is the common law, and it was inserted for some reason by the framers of the Constitution in that instrument as a part of the organic law.

It is urged that this right is given by the Constitution, and we are referred to the first section of Article xiv., and the nineteenth section of Article xi. I have examined those sections with great care, and I do not find in any of them any such authority conferred as to rates or compensation. Those sections only make it the duty of the local authorities to fix rates.

As I understand the provisions referred to, they only affect this result, that where by law the franchise is conferred on an individual or company to collect rates or compensation, such rates or compensation can only be fixed by the local tribunals mentioned in those sections.

But back of all this lies the power of the Legislature to grant this right to collect and to limit it as to the persons chargeable therefor, and perhaps to say when it shall be collected, whether monthly or every three months.

I do not find any such grant in the Constitution. It does recognize the right as existing in some individuals or corporations, and makes it the duty of the Boards of Supervisors when such persons or corporations exist, to fix the rates to be charged by them. But in such cases, the right to collect exists by virtue of law, and is no more extensive than the law makes it, and the Boards of Supervisors, when they come to act, fix the rates as allowed by law. Such Board can not fix rates to be collected when the statute says the water shall be free. They merely take the statute conferring the right as defined by statute, and fix the rates to be collected of such persons as are chargeable, and when the law says no charge is to be made for water furnished, they fix no rate.

There is no statute giving the right to collect rates to any person or corporation who shall lay down pipes and bring water into a city or town. On the contrary the statute (see Act of March 7, 1881, Stat. 1881, p. 54), goes no further than the Constitution. It is merely intended to carry out the provisions of the Constitution, and to enforce action on the part of the Boards of Supervisors in executing the duty devolved on them by the Constitution.

That the construction placed on the provisions of the Constitution by the Legislature is that urged herein, appears from the sixth section of the Act of 1881, above cited.

"Section 6. Rates for the furnishing of water shall be equal and uniform.    There shall be no discriminations made between persons, or between persons and corporations or as to the use of water for private and domestic, and public, or municipal purposes; *provided,* that nothing herein shall be so construed as to allow any person, company, association, or corporation, to charge any person, corporation, or association anything for water furnished them when, by any present law, such water is free."

In this section, to show that the only object of the Act was to enforce the provisions of the Constitution in relation to the duty cast upon the Supervisors by the Constitution, they expressly declare in the *proviso* to the sixth section, quoted above, that nothing in this Act shall be construed as allowing a charge for water furnished, where by any law, such water is to be furnished free.

If this deduction be incorrect it is yet clear, from this section, that the Legislature did not intend to change the law as to the obligation to furnish water free of charge when so required by statute, and the whole act shows no intention to confer any franchise to collect rates or compensation for water on any individual or corporation.    The Act was only intended to enforce the fixing of rates for the purposes of those who had the right to collect such rates already conferred by law.

I cannot perceive that the right to collect rates for water has been conferred on any individual, or company, or corporation, introducing water into a city or town, by the Constitution or the Legislature, when such rates are fixed by the Board of Supervisors, without any previous grant made by law to such individual or corporation to collect such rates, and therefore the Act of 1858 remains unaltered, so far as the obligation to furnish water free of charge is imposed upon a company or corporation formed under that Act.

I will add here that water is still to be furnished for municipal purposes under the Act of 1858, for which rates are to be fixed.    Such purposes are plainly pointed out in the opinion of the Court in *Spring Valley Water Works* v. *The City and County of San Francisco,* 52 Cal. 122.    Such are the municipal purposes referred to in the sixth section of the Act

of 1881, and such are the rates to be collected of a city and county, etc., under the fourteenth article of the Constitution.

In my judgment, the majority of the Court have construed the power to *fix rates,* vested in the local bodies, as a power in such local bodies, to confer the franchise to *collect rates,* which power is given to the Legislature by the general express grant of the legislative power, and positively declared to pertain to the last-named body by the second section of the fourteenth Article of the Constitution. So far as the question before the Court is to be considered, the Act of 1858 remains unchanged.

I am of opinion that the writ prayed for should be denied.

McKEE, J., dissenting:

The Spring Valley Water Company was organized under an Act of the Legislature of the State, approved April 26, 1858. The object of its organization was to supply the City and County of San Francisco and its inhabitants with pure, fresh water. For that purpose the State delegated to it the right to exercise the power of eminent domain for the acquisition of property necessary to its use, and to use the streets, ways, alleys, and highways in the city and county for conducting water into and through the city to any part of it. In consideration of the delegation of those rights, the company bound itself to furnish water, to the extent of its means, to the city and county, in case of fire or other great necessity, free of charge, and to all its inhabitants on demand, for family use, so long as the supply lasted, at rates to be fixed according to law. The agreement to do these things was a contract between the corporation and the State, upon the performance of which the company entered and it has been since, presumptively at least, engaged in its performance according to law. At all events it has had the protection of the law in the control and management of the property which it has devoted to the use of the public; and that use has been subject only to the regulation of the price which the company is entitled to collect from individual consumers.

This power to regulate the use of property dedicated to a public use is, as we have heretofore held in *S. V. W. W.* v. *Supervisors,* 7 Pac. C. L. J., 614, governmental, not contract-

ual. . It is a power which the State could not, if it would, delegate or barter away to any person natural or artificial. And in the Constitution of the State this doctrine has been emphasized; for Section 1, Art. xiv., of the Constitution declares, "That the use of all water now appropriated for sale, rental, or distribution, is hereby declared to be a public use, subject to the regulation and control of the State, in the manner to be provided by law;" and Section 2, Art. xiv., prohibits "all water corporations from exercising the right to collect compensation, except by authority of and in the manner prescribed by law."

No complaint is made of any infringement of the rights accorded to the company by the Act of 1858, under which the corporation was organized; but it claims in this proceeding that the new Constitution has granted to it additional rights, and, at the same time, absolved and released it from the duty by which it bound itself to furnish the city and county with free water for the extinguishment of fires or other great necessities; and that since the adoption of the Constitution it is now only bound to furnish water to the city and county at the same rates that it furnished it to other consumers. This claim of the company is founded upon Section 19, Art. xi. of the Constitution, and Section 3 of the Act of 1858.

The latter provides that: "All privileges, immunities and franchises that may be hereafter granted to any individual or individuals, or to any corporation or corporations, relating to the introduction of fresh water into the City and County of San Francisco, or in any city or town in this State, *for the use of the inhabitants thereof,* are hereby granted to all companies incorporated or that may hereafter become incorporated, for the purpose aforesaid." And the former declares that, "In any city where there are no public works owned and controlled by the municipality, for supplying the same with water, * * * * any individual or any company duly. incorporated for such purpose under and by authority of the laws of this State, shall, under the direction of the Superintendent of Streets or other officer in control thereof, and under such general regulations as the municipality may prescribe for damages and indemnity for damages, have the privilege

of using the public streets and thoroughfares thereof, and of laying down pipes or conduits therein and making connections therewith, so far as may be necessary for introducing and supplying such city and its inhabitants * * * * with fresh water for domestic and all other purposes, upon the condition that the municipal government shall have the right to regulate the charges thereof."

Relying on the third section of the Act of 1858, the company asks this Court for such construction of that section and of the foregoing section of the Constitution as will stretch the former so that it may cover the latter and give to the corporation the immunities, privileges and franchises grantable under the latter. In my judgment the third section of the Act of 1858 can not be stretched to that extent, and does not entitle the corporation to any other rights than those which it enjoys under its charter. The section contains a stipulation that the Spring Valley Water Company shall be entitled to all the immunities, privileges and franchises which may be granted to any person or corporation, "relating to the introduction of fresh water into any city or town in the State, *for the use of the inhabitants* thereof." Such are the terms of the stipulation, but they do not cover the terms of the constitutional provision relating to the introduction of water into a city " for the purpose of supplying *such city and its inhabitants* with fresh water for domestic and all other purposes." A contract to furnish water to a city for certain exigencies is not a contract to furnish water to the city and its inhabitants for all purposes. The greater includes the less ; but the less does not include the greater; nor does it entitle a claimant under it to what may be included in the greater. A corporation is no more entitled than a natural person to that which is not nominated in its bond. The only rights it can claim under its contract are those specifically included within its terms; and any ambiguity or doubt arising out of those terms must be resolved in favor of the public. Both the Act of 1858 and Section 19 of Article xi. of the Constitution must therefore be strictly construed, so far as the rights of the public are affected. Now, while it is true that there is no intimation of free water in the Constitution, it does not follow that the State intended to annul the Act of 1858, or to enlarge Section

3 of that Act so as to make it cover things which are not expressed by its terms, nor to release the Spring Valley Water Company from any of its obligations. Certainly none of these things can be presumed. To presume the latter would be to subject the framers of the Constitution to the imputation of legislating so as to impair the obligation of the contract between the corporation and the people. Such a construction would defeat one of the objects, *i. e.,* to obtain a supply of water for the City and County of San Francisco, free of charge, for certain exigencies. Whatever defeats the object of a contract violates its obligation. Any legislation which makes a contract more beneficial to one party and less to the other, than it purports by its terms to be, impairs the contract. To presume the latter would be to strike dead the corporation and strip it of its franchise and privileges.

The framers of the Constitution, therefore, never intended to sweep away the legislation under which the corporation was organized, nor to deprive it of its rights nor to release it from any of its obligations. For the Constitution has not conferred upon any person, natural or artificial, privileges, immunities and franchises in relation to the introduction of fresh water into any city in the State "for the use of its inhabitants" which have not been conferred on the Spring Valley Water Corporation by its own charter. The company has exercised and enjoys the privilege of using the public streets and thoroughfares and of laying down pipes and conduits in them and of making connections with them in any part of the city. It has exercised and continues to exercise the right to collect rates or compensation for the water which it furnishes for family use and domestic purposes to the inhabitants of the city and county. What other or greater rights does the Constitution confer upon any other person that may, under the provision of the Constitution, undertake to supply fresh water to the inhabitants of any city in the State? None. Having these, there is nothing more which the Company has a legal right to demand. The obligation of the corporation to furnish water free to the city for the purposes specified in its contract is a thing distinct in itself from its obligation to furnish water to the inhabitants of the city. And the stipu-

lation of the State contained in the third Section of the Act of 1858 relates altogether to the latter and not to the former.

For these reasons I am led to dissent from the prevailing opinion.

Ross, J., (upon denying petition for re-hearing):

In voting to deny the petition for re-hearing in this cause, which I do, I wish to say that before so voting I have carefully reconsidered the question involved in it. When it was determined here by the opinion of a majority of the Court filed June 6, 1881, in the case entitled *Spring Valley Water Works* v. *Board of Supervisors of San Francisco*, No. 7,629 (7 Pac. C. L. Jour., 614), that the provisions of the new Constitution in relation to water were applicable to the Spring Valley Company, I distinctly stated in an opinion in which I dissented from the views of the majority, that, in my opinion, the effect of the conclusion then reached by the Court would be to relieve the company of the obligation to furnish the City and County of San Francisco with water for any purpose free of charge.

When the question was presented in the subsequent case entitled *San Francisco Pioneer Woolen Factory* v. *Brickwedel*, No. 8,252, the opinion in which was filed March 10, 1882, and is reported in 9 Pacific Coast Law Journal, p. 136, I distinctly stated that under the judgment of the Court in the former case, holding that the provisions of the present Constitution are applicable to the company in question, the company *had*, in my opinion, become relieved of the obligation to furnish the city with any water free of charge. On the first consideration of the present case I held the same view. I could not then, and can not now, read the provisions of the Constitution in any other way. If those provisions apply to this company at all, they apply to it fully. They can not be read one way for the Spring Valley Water Company and another way for another company or for an individual. They mean the same thing for every person, natural or artificial, to which they apply. If I could place the same interpretation on Section 19 of Article xi. and Sections 1 and 2 of Article xiv. of the Constitution, that Mr. Justice McKinstry does, in his dissenting opinion in this case, and hold that it is compe-

tent for the Legislature, under the Constitution, to impose upon any new corporation or person wishing to introduce water into the city, the furnishing of water to the city and county *free of charge*, I would agree with him in his conclusion in the present case. But I can not so read the provisions of the Constitution. I understand Section 19 of Article xi. to clothe all corporations and persons to which it applies, with the privilege (under the direction of the Superintendent of Streets and subject to municipal regulations in relation to damages) of introducing and supplying the City and County of San Francisco and its inhabitants with fresh water for domestic and all other purposes (with certain exceptions in regard to damages) upon the *sole condition* that the municipal government shall have the right to regulate the charges thereof.

It is not competent, I think, for the Legislature to add to the terms here imposed. Subject to the restrictions provided for in the Constitution, any person or corporation may lay pipes in the streets for the purpose of supplying the city and county and its inhabitants with water, and the Legislature has no right to require any such person or corporation to furnish the city and county with any water free of charge. And I find upon an examination of the debates in the Constitutional Convention, that that was the expressly declared intention of the distinguished lawyer—Hon. Volney E. Howard—at whose instance the clause in question was inserted in the Constitution. Previous to the adoption of this clause, there had been offered for insertion in the Constitution the following: "In any city where there are no public works owned and controlled by the municipality for supplying the same with artificial light and water, any company duly incorporated by the laws of this State shall, under the direction of the Superintendent of Streets of said city, have the privilege of disturbing and using the public streets and thoroughfares thereof, and of laying down pipes and conduits therein, and of making connection therewith, so far as may be necessary for introducing into and supplying such city and its inhabitants either with gaslight or other illuminating light, or with fresh water, for domestic and all other purposes, for which the same or either may be used, upon the conditions following:

such company shall make good all damages to such streets and thoroughfares, except necessarily occasioned by the reasonable use thereof, and be liable to such city and its inhabitants therefor.    Such company introducing and supplying gaslight, or other light, and fresh water, or either, shall furnish the same, so far as necessary and required, free and without charge, to all public buildings, institutions, and school houses belonging to such city, and used for municipal purposes; and such company introducing and supplying water shall also furnish the same free and without charge to the Fire Department, and for the extinguishment of fires.    Each company, its property and franchise, shall be liable to such city and its inhabitants for the performance of these conditions.    (Vol. 2 of the Proceedings of the Constitutional Convention, page 1,072.)

After much debate this section was stricken out, and on motion of Mr. Howard, the clause of Section 19 of Article xi. of the Constitution was adopted.

The introduction of this clause was accompanied by the following remarks of Judge Howard, page 1,075: "This is a different proposition altogether from the one struck out.  My provision steers clear of confining this privilege to corporations or incorporated companies.  It gives to any individual, as well as to any incorporated company, the right to the use of streets for laying down pipes for the supply of gas and water or either.  I think that the objection that was taken to the section as formerly introduced was well taken—that it should not be limited to corporations; that any individual, for the public good, should have the right to use the street for laying down pipes for supplying water or gas.  It is in the public interest that it should be conceded, and it prevents monopoly in any sense.  It also provides that the city authorities may make a regulation in relation to damages and indemnity; that is, that they may make a regulation requiring all work to be done under the supervision of the Superintendent of Streets, and also, if any damage should be likely to occur, they may, by security or otherwise, guard against it. *I leave out also the provision which required the company to supply the city and the school houses, and other public build-*

*ings with gas or water free of charge, because I think that an unjust burden."*

The provision introduced by Judge Howard, and thus explained by him, was adopted, and forms part of Section 19 of Article xi. of the Constitution. In my opinion, it bears the construction intended by him and none other.

There was therefore, no such thing as "free water" contemplated in or by Section 19 of Article xi., but, on the contrary, it was intended that every corporation and person subject to its provisions, should be paid for all water furnished at rates to be regulated by the municipal government. Section 1 of Article xiv. follows and declares that the rates or compensation to be collected for water *so supplied, shall be fixed* annually by the Board of Supervisors, by ordinance, which shall continue in force for one year and no longer.

Applying these provisions to the Spring Valley Water Works, as must be done under the decision of this Court in the case to which allusion was first made herein, I see now, as I saw then, no escape from the conclusion that the company is entitled to be paid for all water furnished by it to the City and County of San Francisco.